**John J. FLICK, Jr.,
Petitioner–Appellant,**

v.

**Dudley BLEVINS, Warden,
Respondent–Appellee.**

No. 87–3036.

United States Court of Appeals,
Seventh Circuit.

Argued April 25, 1989.

Decided Oct. 12, 1989.
Rehearing and Rehearing In Banc
Denied Dec. 26, 1989.

Howard B. Eisenberg, Southern Illinois University School of Law, Carbondale, Ill., for John J. Flick, Jr., petitioner-appellant.

John J. Flick, Jr., pro se.

Gerald A. Coraz, Asst. U.S. Atty. and Bradley L. Williams, U.S. Atty., Office of the U.S. Atty., Indianapolis, Ind., for Dudley Blevins, respondent-appellee.

Before WOOD, Jr., CUDAHY and EASTERBROOK, Circuit Judges.

PER CURIAM.

Petitioner John J. Flick, Jr. ("Flick"), appeals the district court's dismissal *sua sponte*, as frivolous, his 28 U.S.C. § 2241 petition for a writ of habeas corpus and motion to proceed *in forma pauperis*. For the reasons stated below, we affirm.

## I.

On March 14, 1986, the United States District Court for the Western District of Pennsylvania issued a writ of habeas corpus *ad prosequendum* [1] to federal authorities so that they could take Flick into custody, and try him on federal charges which were pending before that court.[2] At the time, Flick was confined in the State Correctional Institution, Pittsburgh, Pennsylvania, serving a Pennsylvania state sentence and awaiting a parole hearing.[3] Pursuant to the writ, federal authorities took Flick into custody on March 21, 1986, and he was later tried and convicted in federal district court; he was sentenced on May 28, 1986 to serve seven years in a federal penitentiary. The *ad prosequendum* writ required Flick's return to state custody upon completion of the federal criminal trial, but on May 30, 1986, federal authorities in error transported Flick to the United States Penitentiary at Terre Haute, Indiana.

On July 24, 1986, nearly two months after Flick arrived at the Terre Haute facility, the Commonwealth of Pennsylvania filed a parole violation warrant with the penitentiary, requesting in a separate letter that the federal authorities inform the Commonwealth as to the expected date for Flick's "release or parole." The Pennsylvania Board of Probation and Parole ("Pennsylvania Parole Board") considered that Flick violated the terms of his parole by virtue of his federal conviction. After receiving this letter, the Federal Bureau of Prisons determined that "due to an administrative error" Flick had been transported to Terre Haute without return to state custody as required by the *ad prosequendum* writ. Therefore, on September 5, 1986, federal authorities transferred Flick to the custody of the Pennsylvania Parole Board. Flick received credit on his federal sentence for the time spent in federal custody from May 28, 1986 until September 5, 1986, the date he was returned to state custody. Flick completed serving his state sentence on September 30, 1986, and on that date, federal authorities again took Flick into custody. They returned him to the Terre Haute facility where he is presently incarcerated.

## II.

On November 4, 1987 Flick filed this petition for a writ of habeas corpus pursu-

---

1. This writ "issues when it is necessary to remove a prisoner [from one jurisdiction] in order to *prosecute* in the proper jurisdiction. . . ." Black's Law Dictionary 638 (Special Deluxe 5th Ed.1979).

2. Flick was charged with violating 18 U.S.C. § 1202(a)(1), knowingly receiving, possessing, or disposing of money or property which was delivered as ransom or reward in connection with a violation of 18 U.S.C. § 1201, kidnapping.

3. Whether Flick was in custody awaiting a parole *revocation* hearing is not clear from the record. However, Pennsylvania parole records indicate that Flick was paroled on October 1, 1985 and that he was last gainfully employed in January, 1986. No other information is available from the record or briefs.

ant to 28 U.S.C. § 2241 in the district court for the Southern District of Indiana. In his *pro se* petition, Flick contended that his continued incarceration in the federal penetentiary was illegal because the federal authorities released him to the Pennsylvania state authorities after he began serving his federal sentence. Flick claimed this meant that the Federal Bureau of Prisons had relinquished all jurisdiction over him. Flick, also claiming pauper status, filed a motion to proceed *in forma pauperis.*

The district court considered the petition and motion without requesting that the defendants respond. The district court *sua sponte* held that Flick's motion was frivolous under 28 U.S.C. § 1915(d); the court reasoned that a prisoner subject to imprisonment by two sovereigns cannot complain about the order in which his sentences are served. Citing this court's opinion to that effect, *Jeter v. Keohane,* 739 F.2d 257, 258 (7th Cir.1984), the court denied both the motion to proceed *in forma pauperis* and the petition for the writ. Flick timely appealed, but the district court denied leave to appeal. Flick then paid the filing fees, and this court appointed counsel.

### III.

On appeal, Flick argues that the district court abused its discretion by *sua sponte* denying his motion to proceed *in forma pauperis* and dismissing his petition for a writ of habeas corpus. Flick claims that the *sua sponte* dismissal of a *pro se* indigent's claims is only proper in extreme cases, and furthermore, that dismissal in such a case, prior to a responsive pleading, is a denial of equal protection.

Flick also argues that his petition is not frivolous. Flick claims that he is not challenging the order of his confinement as the district court held. Rather, he contends that, based on the letter which requested when Flick would be "release[d] or parole[d]", the Pennsylvania authorities agreed to let him serve his federal sentence prior to completing the state sentence.

Flick argues that the Federal Bureau of Prisons relinquished jurisdiction over him once they released him to the Pennsylvania Parole Board. Finally, Flick argues that he did not receive federal jail time credit for time spent in state custody after his initial stay at Terre Haute, and that these issues prevent summary dismissal under 28 U.S.C. § 1915(d).

The government counters that the district court properly dismissed Flick's petition and denied his motion because his claims were frivolous. The government contends that the Federal Bureau of Prisons only obtained limited jurisdiction over Flick based on the writ *ad prosequendum.* The government argues that Flick was only "on loan" for purposes of prosecution and that, therefore, Flick could not "commence" service of his federal sentence as provided in 18 U.S.C. § 3568.[4] In addition, the government claims that Flick received full credit toward his federal sentence for the time spent in federal custody, from May 28, 1986 to September 5, 1986. Finally, the government argues that a § 1915(d) dismissal is appropriate only when a non-indigent litigant's claims would also be dismissed, and that Flick's claims would have been dismissed even if he had paid the filing fee in the district court in the first instance.

### A. *In Forma Pauperis* Motion

When litigants file motions for *in forma pauperis* status in the district courts of this circuit, the "district courts must make a preliminary determination that the prospective litigant is indigent and that his action is neither frivolous nor malicious before granting" such status. *Smith–Bey v. Hospital Administrator,* 841 F.2d 751, 757 (7th Cir.1988); 28 U.S.C. § 1915(d). Since these determinations are made on very sparse records, a finding of frivolousness is only warranted where "the petitioner can make no rational argument in law or facts to support his claim...." *Id.* at 757 (citing *Jones v. Morris,* 777 F.2d

---

**4.** The government fails to add that if Flick did not "commence" his sentence pursuant to 18 U.S.C. § 3568, then the federal authorities retained jurisdiction over him due to the federal conviction.

1277, 1279 (7th Cir.1985) which quoted *Corgain v. Miller*, 708 F.2d 1241, 1247 (7th Cir.1983)). Thus, the standard for allowing claimants to proceed *in forma pauperis* is more relaxed than the standard applied to fee-paying litigants, *see Neitzke v. Williams*, —— U.S. ——, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Campbell v. Miller*, 787 F.2d 217, 219 (7th Cir.), *cert. denied*, 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986), in that the latter must state a claim under Fed.R.Civ.P. 12(b)(6) so as to survive a motion to dismiss. Although the *in forma pauperis* threshold is lower than for fee-paying litigants, district courts are authorized by 28 U.S.C. § 1915(d) to dismiss frivolous actions. *See* 28 U.S.C. § 1915(d).

To determine whether Flick has a potentially meritorious claim, in other words, a "rational argument in law or facts", we turn to Flick's substantive claims.

## B. The *Ad Prosequendum* Writ

A writ of habeas corpus *ad prosequendum* enables a state [5] to take temporary custody of a prisoner confined within another jurisdiction, and indict, prosecute and sentence such prisoner. The *ad prosequendum* writ issues on the order of a federal district judge. *See* 28 U.S.C. § 2241(c)(5). Where the writ expressly requires the return of the prisoner to the "sending" state, the sending state retains full jurisdiction over the prisoner since the prisoner is only "on loan" to the prosecuting jurisdiction. *See Crawford v. Jackson*, 191 U.S.App.D.C. 170, 589 F.2d 693, 695 (1978), *cert. denied*, 441 U.S. 934, 99 S.Ct. 2056, 60 L.Ed.2d 662 (1979); *United States ex rel. Moses v. Kipp*, 232 F.2d 147 (7th Cir.1956). When the "receiving" state is the federal government, whether the prisoner is returned to the sending state, or is compelled to serve his federal sentence (if convicted), is a matter of comity between the two sovereigns. *Causey v. Civiletti*, 621 F.2d 691, 693–94, *reh. denied*, 633 F.2d 582 (5th Cir.1980).

A detainer, on the other hand, filed with the prisoner's custodian on the direction of a federal prosecutor or other law enforcement officer, operates in the same manner as an *ad prosequendum* writ, in that it allows prosecution of a prisoner serving time in another jurisdiction, but a detainer implicates other concerns. *See United States v. Mauro*, 436 U.S. 340, 358 n. 25, 98 S.Ct. 1834, 1846 n. 25, 56 L.Ed.2d 329 (1978). The Interstate Agreement on Detainers ("I.A.D.") was enacted and adopted by the states and the U.S. Government because detainers potentially restrict, circumscribe, or disrupt the activities, including rehabilitative activities, of prisoners within the "sending" state's prison. *Mauro*, 436 U.S. at 358 n. 25, 98 S.Ct. at 1846 n. 25. Where such detainers are lodged, the Act's pertinent provision disallows shuttling of prisoners between jurisdictions just to suit the Bureau of Prisons. *See* 18 U.S.C.App. III, at 2, Art. IV(e) (1982). Under the Supreme Court's disposition in *Mauro*, the writ of habeas corpus *ad prosequendum* does not operate as a detainer for purposes of applying the I.A.D. 436 U.S. at 364 n. 30, 98 S.Ct. at 1849 n. 30. In deciding that writs are not the equivalent of detainers, the Court relied heavily on the fact that *ad prosequendum* writs were in existence better than 150 years prior to the enactment of the I.A.D. and that such writs would have been named in addition to detainers had the legislature wanted to include these writs within the Act. *Id.* at 357–58, 360, 98 S.Ct. at 1845–46, 1847. Thus, because such writs are not detainers within the meaning of the Act, the anti-shuttling provision does not apply to the writs.

With this in mind, Flick essentially argues that his "shuttling" between federal and state prison affected his rights in such a way as to require release from federal imprisonment. But his custody was authorized pursuant to the writ and not a detain-

---

5. The term "state" refers to any jurisdiction, whether federal or state. "Sending" state refers to a jurisdiction in which a prisoner is presently serving a sentence. "Receiving" state refers to the jurisdiction presenting the writ of habeas corpus *ad prosequendum* in order to prosecute the prisoner.

er. Thus, Flick's argument, although he asserts it indirectly, was rejected in *Mauro*.

■ In addition, Flick's argument is not persuasive because he misconstrues the authority the federal government had when they transferred him to Terre Haute. As noted above, the federal government only had jurisdiction to prosecute, convict and sentence him. *Crawford*, 589 F.2d at 695. Although the federal authorities failed to return Flick to state custody as the writ required, the failure to return a prisoner obtained by the writ *ad prosequendum* does not mean that the federal sentence "commences" pursuant to 18 U.S.C. § 3568.[6] *Crawford*, 589 F.2d at 695–96. The court in *Crawford* held that the federal government was not able or entitled to enforce the federal sentence until the prisoner was first returned to the sending state's jurisdiction, and then returned to United States officials. *Id.* at 695 (quoting *Application of Nelson*, 434 F.2d 748, 750 (8th Cir.1970), *on remand*, 445 F.2d 631 (8th Cir.1971)).

■ Since his federal sentence could not commence when he was in custody at Terre Haute on the writ of habeas corpus *ad prosequendum* which did not act as a detainer, Flick's custodians were not therefore subject to the I.A.D. Flick was correctly returned to the federal penitentiary to begin his federal sentence. *See Jeter*, 739 F.2d at 258. Likewise, Flick's contention that he failed to receive credit for time spent in state custody after his detention at Terre Haute is without merit for he is requesting double credit for time spent under the authority of the Pennsylvania prison system.

Flick's claims cannot be supported "in fact or in law." The district court properly denied, *sua sponte*, Flick's motion for leave to proceed *in forma pauperis* under 28

U.S.C. § 1915(d), and properly dismissed the petition for a writ of habeas corpus.

AFFIRMED.

CUDAHY, Circuit Judge, dissenting in part:

I certainly agree with the majority's conclusion that an *ad prosequendum* writ is not a detainer and is not subject to the anti-shuttling provisions of the Interstate Agreement on Detainers. Therefore, petitioner Flick properly loses on the merits, and his complaint would have been dismissed by motion under Federal Rule of Civil Procedure 12(b)(6) had such a motion been brought. *Neitzke v. Williams*, —— U.S. ——, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), clearly instructs, however, that this does not automatically make the complaint dismissible *sua sponte* under 28 U.S.C. § 1915(d). *Neitzke* is careful to recognize "the surfeit of meritless *in forma pauperis* complaints in the federal courts," *id.* 109 S.Ct. at 1832, but limits *sua sponte* dismissals to claims "based on an indisputably meritless legal theory" and "claims whose factual contentions are clearly baseless." *Id.* at 1833. Here, the claim of indisputable lack of merit would have to be based on *United States v. Mauro*, 436 U.S. 340, 357–61, 98 S.Ct. 1834, 1845–48, 56 L.Ed.2d 329 (1978). But there is no indication that the district court viewed this problem as involving *Mauro* or the lack of parallel between a detainer and an *ad prosequendum* writ.

It is important that we view the allegations of a complaint not *ex post*, from the vantage of an appellate court that has sifted through the allegations and determined them to be without merit, but *ex ante*, as a paying litigant would. It is here only at the appellate level that we have at last divined precisely why Flick's complaint lacks merit. That it took the resources of an appellate court to provide an accurate analysis should indicate that Flick's complaint is not based on an "indisputably mer-

---

**6.** Section 3568 provides:

The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary ... for service of such sentence. The Attorney General shall give any such person credit toward service of its sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed.

No sentence shall prescribe any other method of computing the term.

itless legal theory." Given the mandate of the Supreme Court in *Neitzke*, it is difficult to conclude that Flick's claim was "frivolous" for purposes of a section 1915(d) dismissal. The fact that we can at this point see ahead to the result of a motion for dismissal under Rule 12(b)(6) should not alter that conclusion. I therefore respectfully dissent on this point.