**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 95-5880

ROY HORTON,
Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of West Virginia, at Elkins.
Irene M. Keeley, District Judge.
(CR-93-40)

Argued: October 29, 1996

Decided: February 24, 1997

Before MURNAGHAN and MICHAEL, Circuit Judges, and
DOUMAR, Senior United States District Judge for the Eastern
District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Howard Gene Higgins, Jr., Morgantown, West Virginia,
for Appellant. Thomas Oliver Mucklow, Assistant United States
Attorney, Wheeling, West Virginia, for Appellee. **ON BRIEF:** Wil-
liam D. Wilmoth, United States Attorney, Wheeling, West Virginia,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Roy Horton appeals from the United States District Court for the Northern District of West Virginia his November 1, 1995 convictions on one count of aiding and abetting in the distribution of cocaine base and one count of using and carrying a firearm during a drug transaction. We affirm his convictions.

Most of the issues on appeal center around alleged procedural deficiencies in the various transfers of Horton between state and federal custody. The key issues are:

(1) Whether Horton's due process rights were violated when he was moved from state custody to federal custody through a writ of habeas corpus ad prosequendum, returned to state custody, and then transferred back to federal custody without the issuance of a second writ of habeas corpus ad prosequendum.

(2) Whether Horton was entitled to a detention hearing upon his return to federal custody after he initially waived the detention hearing at his federal arraignment.

(3) Whether Horton's due process rights were violated when he was detained without the issuance of a commitment order.

(4) Whether Horton's trial counsel was ineffective.

(5) Whether Horton's conviction under 18 U.S.C.§ 924(c) was supported by the evidence.

I. Factual and Procedural Background

Throughout February of 1993, West Virginia undercover police officers bought cocaine and crack cocaine from Horton. On February

2

27, 1993, a police officer spotted Horton operating a vehicle at night without lights. The officer pulled Horton over on suspicion of driving under the influence of alcohol, and arrested him for that charge and other misdemeanors. A search of Horton's person at the police station revealed seventeen rocks of crack cocaine and bullets; a search of his automobile revealed a .22 caliber revolver under the driver's seat. These items formed the basis of the federal charges against Horton. He was indicted on the federal charges on June 15, 1993. The multi-count federal indictment charged Horton with three counts of drug crimes, with using and carrying a firearm in relation to a drug traf-ficking crime, and with one count of possession of a firearm by a con-victed felon.

At the time of his indictment, Horton was held in West Virginia state custody for the state probation revocation proceedings. He also was scheduled to stand trial for numerous state misdemeanor charges in August 1993. On June 22, 1993, Horton appeared before a West Virginia circuit court. The state circuit court found Horton in viola-tion of his state probation, but the court suspended the execution of his state prison sentence and advised the United States that Horton was to be released to United States District Court to face the federal charges against him.

On June 23, 1993, the United States petitioned for a writ of habeas corpus ad prosequendum to secure Horton's presence at his federal arraignment. The petition was granted on June 25, 1993, and Horton was transferred to federal custody on July 6, 1993. By letter dated July 6, 1993, the state court advised Horton and the United States that the state sentence was suspended, and that the defendant would be released for trial on the federal charges.[1] A state court order providing for the release was entered on July 19, 1993. Horton appeared before

_____

[1] Horton's release was explained in a letter from the trial judge to coun-sel dated July 6, 1993. The letter was filed on the same day. The letter reads, "[a]t this time, I am of the opinion to and will generally suspend execution of his state prison sentence. Therefore, he may be released to federal authorities to answer charges pending in Criminal No. 93-40, United States District Court for the Northern District of West Virginia. Counsel for the State is requested to prepare the appropriate order and circulate same for entry."

a federal Magistrate Judge for arraignment on July 7, 1993, before the formal written order of release was entered. Horton at that time waived his right to counsel and to a detention hearing.

At arraignment, Horton requested that he be permitted to return to state custody to be tried on the pending state charges. The order releasing Horton from federal custody stated that his release was "pending disposition of the state criminal charges or until further order of the Court." Accordingly, Horton was returned to a West Virginia county jail on July 12, 1996. Horton then appeared in state court for pretrial proceedings.

On August 3, 1993, Horton was transferred from state jail to federal jail. The United States did not request a second writ of habeas corpus ad prosequendum, and no commitment order or detention order was entered. The remaining state misdemeanor charges against Horton were dismissed on August 18, 1993 and September 20, 1993.

Before his federal trial began, Horton filed motions to dismiss and motions to suppress statements and evidence. The district court denied these motions and began the trial. After two witnesses testified, Horton opted to forgo trial and plead guilty to two counts of the multi-count indictment. He pled guilty to one charge of distribution and aiding and abetting in the distribution of cocaine base and one count of using and carrying a firearm in connection with a drug trafficking crime.

Horton subsequently filed a motion to withdraw his guilty plea. On June 26, 1995, the district court considered Horton's motion to withdraw his plea, which was based on a claim of ineffectiveness of counsel. The district court denied Horton's motion, concluding that defendant had received effective assistance of counsel. On November 1, 1995, the district court sentenced Horton to 120 months on Count Two (distribution and aiding and abetting in the distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1)) and sixty consecutive months on Count Four (using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)). The judgment order was entered on November 2, 1995, and the defendant filed a timely appeal on November 8, 1995.

4

Horton claims that his transfer to federal custody on August 3 was contrary to the terms of the July 9 release order, violating his due process rights. He further argues that he was denied the opportunity to seek bail after his August 3, 1993 transfer to federal custody because his initial waiver of the detention hearing at the July 7, 1993 arraignment became void upon transfer, that he was effectively kidnapped and illegally detained, and that he was transferred without the paperwork required by law. He also claims his trial counsel was ineffective and that the evidence adduced at trial was insufficient to support his conviction of using and carrying a firearm in relation to a drug trafficking crime.

II. Analysis

A. Alleged Procedural Deficiencies

The release order issued by the federal court after arraignment on July 9, 1993 stated that Horton would be transferred back to state custody "pending disposition of the state charges against him or until further order of the court." Horton claims that this language created a liberty interest in his remaining in state custody until the state charges were resolved. We reject this contention. Prisoners do not have liberty interests in remaining in any particular penal institution. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State."); Corgain v. Miller, 708 F.2d 1241, 1252 (7th Cir. 1983) ("a prisoner has no federal liberty interest in remaining within the state prison system any more than he has such an interest in remaining at a particular institution within the state system.").

Horton argues that the United States was required to obtain a second writ of habeas corpus ad prosequendum when Horton was retransferred to federal custody because the release order created an expectation that he would remain in state custody. Writs of habeas corpus ad prosequendum are authorized by 28 U.S.C.§ 2241(c)(5). The writ allows a summoning jurisdiction to order that a prisoner being held in another jurisdiction appear to answer charges against him. The writ enables the United States "to take temporary custody

5

of a prisoner confined within another jurisdiction, and indict, prosecute and sentence such prisoner." <u>Flick v. Blevin</u>, 887 F.2d 778, 781 (7th Cir. 1989), <u>cert. denied</u>, 495 U.S. 934 (1990). A writ of habeas corpus ad prosequendum does not alter a defendant's custody status, it merely removes a prisoner to another jurisdiction for prosecution. <u>Munz v. Michael</u>, 28 F.3d 795, 798 (8th Cir. 1994). The prisoner is viewed as "on loan" to the summoning jurisdiction. <u>Thomas v. Whalen</u>, 962 F.2d 358, 361 n.3 (4th Cir. 1992).

Although Horton strenuously objects to his second transfer to federal custody because no writ issued, prisoners have no standing to challenge transfers between sovereigns. One case explains, "[i]t is a well-established legal rule that a state prisoner is <u>without standing</u> to contest a federal court's issuance of a writ of habeas corpus ad prosequendum." <u>Derengowski v. U.S. Marshal</u>, 377 F.2d 223, 223 (8th Cir), <u>cert. denied</u>, 389 U.S. 884 (1967). This prohibition also bars prisoners from challenging the operation of writs. <u>Id</u>. A Seventh Circuit case explained, "[w]hen the `receiving' state is the federal government, whether the prisoner is returned to the sending state, or is compelled to serve his federal sentence (if convicted), is a matter of comity between the two sovereigns." <u>Flick</u>, 887 F.2d at 781. Prisoners are denied standing because

> One accused of a crime . . . . should not be permitted to use the necessary machinery of one sovereignty to obstruct his trial in the courts of the other, unless the operation of such machinery prevents his having a fair trial. He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to the conviction of crime against it.

<u>Ponzi v. Fessenden</u>, 258 U.S. 254, 260 (1922).

We see no reason in this case to depart from this well-established rule. Horton was released to state custody after <u>he</u> requested that he be so released. The federal magistrate judge could have justifiably

6

denied this request. If Horton's request had been denied, clearly Horton would not have a basis for complaint.**2**

Furthermore, the case of United States v. Muhammad, 948 F.2d 1449 (6th Cir. 1991), cert. denied, 502 U.S. 1119 (1992), is persuasive authority for rejecting Horton's claim. The prisoner in Muhammad similarly objected to a transfer, arguing that he "had been illegally taken from `federal custody' to state court without the appropriate writ." Id. at 1452. The prisoner was transferred pursuant to the federal judge's oral order, which indicated that a writ would be forthcoming. The Court of Appeals for the Sixth Circuit concluded that the trial judge's oral ruling sufficiently conferred jurisdiction upon the federal courts, and that even if an error was made, that error was harmless. Id. at 1453-54.

Horton similarly asks that this Court turn the procedural machinery of the states into a substantive right, a violation of which would secure his release. This Court refuses to do so. As the Supreme Court explained, "`[a] liberty interest is of course a substantive interest of an individual; it cannot be the right to demand needless formality.' Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." Olim, 103 S. Ct. at 1748 (quoting Shango v. Jurich, 681 F.2d 1091, 1100-01 (7th Cir. 1982)).

Horton's second and closely related argument is that the federal court relinquished jurisdiction over him when it returned him to state custody, and that consequently a second writ of habeas corpus ad prosequendum was required to reobtain jurisdiction over him. This argument has no merit. See Flick, 887 F.2d at 781-82. In Flick, a fed-

_____

**2** The Writ of Habeas Corpus Ad Prosequendum filed June 25, 1993 stated that Horton was to be remanded to the custody of the U.S. Marshal after his federal appearance pending further disposition of the case. Horton's release order contained similar wording providing that he was to remain in state custody. If the release order is viewed as creating a liberty interest in Horton remaining in state custody, the writ would likewise have created a simultaneous interest in Horton remaining in federal custody. Thus, Horton could argue alternatively that the Government violated his rights no matter where Horton was detained.

eral court issued a writ of habeas corpus ad prosequendum to obtain possession of a state prisoner. The prisoner then was tried and convicted in federal court. The writ "required Flick's return to state custody upon completion of the federal criminal trial, but . . . federal authorities in error transported Flick to the United States Penitentiary . . . . " Id. at 779. The mistake was not discovered until two months later. Flick then was sent back to state custody. After he served his state sentence, he was sent back to federal custody. Flick claimed that the federal government relinquished custody of him when it sent him back to the state. Flick rejected the argument that "his `shuttling' between federal and state prison affected his rights in such a way as to require release from federal imprisonment." Id. at 781.

Once Horton appeared in federal court and entered a plea, he submitted himself to the continuing jurisdiction of the court, and there was thus no need for a second writ to issue. See Carbo v. United States, 364 U.S. 611, 621 (1960). Carbo held that a defendant's initial appearance in court was the equivalent of a "leash" which fastened him to the jurisdiction of the court, and that jurisdiction was not relinquished when a prisoner was returned to another jurisdiction's custody. Once Horton appeared in court, he was subject to the court's jurisdiction and no further writ was required to secure his appearance.

Furthermore, the process by which Horton was brought to court is largely irrelevant when ascertaining whether Horton's conviction should be overturned on direct appeal. Horton claims that the Marshals kidnaped him. Assuming arguendo that Horton's intrastate transfer could state a cognizable federal kidnapping claim under 18 U.S.C. § 1201, the manner in which Horton was brought before the court does not bear upon the validity of his conviction in this case. As discussed previously, the trial court properly obtained jurisdiction over Horton when he appeared for arraignment on July 7, 1993. Therefore, even if the Court were to view Horton's physical transportation as violative of his rights, any violation would not affect the trial court's jurisdiction to try him for the offense. As this Court has noted, "[i]t has long been the general rule that a court's power to try a criminal defendant is not impaired by the government's use of even forcible abduction to bring the defendant within the court's jurisdiction." United States v. Wilson, 721 F.2d 967, 972 (4th Cir. 1984). This is especially true when there are no allegations of governmental conduct

8

which would "shock[ ] the conscience." Id. Horton has not alleged any shocking governmental misconduct. The Supreme Court recently reiterated the message, stating, "[t]here is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." United States v. Alvarez-Machain, 504 U.S. 655, 662 (1992) (quoting Frisbie v. Collins, 342 U.S. 519, 522 (1952)). The Court stressed that what was central to due process was that the defendant be apprised of the charges against him and receive a fair trial; Horton was accorded apprisal and a fair trial. Id. Thus, we see no reason to disturb his convictions.

Horton next argues that he was entitled to a bail hearing when he was returned to federal custody on August 3, 1993. When Horton was first brought before the federal court for arraignment on July 7, 1993, he waived his right to a detention hearing. The Magistrate Judge determined that his waiver was knowing and voluntary. Horton now claims that his initial waiver of the detention hearing on July 7 became null and void when he was transferred on August 3, and that he was entitled to another detention hearing when he was returned to federal custody. This argument is also without merit.

A defendant may waive hearings required by the Bail Reform Act, 18 U.S.C. § 3142. United States v. Clark , 865 F.2d 1425, 1433 (4th Cir. 1989). If the defendant later desires a hearing and requests one, he should be afforded a hearing, even if he previously waived his right to hearings. Id. at 1457. Horton has not submitted any credible evidence indicating that he did, in fact, request such a hearing.**3** Furthermore, Horton's objections to pretrial procedures have been rendered moot by his guilty plea. See United States v. O'Shaughnessy, 772 F.2d 112, 113 (5th Cir. 1985) (dismissing a similar appeal as moot because "[n]either pretrial detention nor release on pretrial bail may now be ordered; the issues are no longer `live,' and the parties

_____

**3** Horton claims that he wrote a letter to the trial judge on September 1, 1993, asking for the hearing, and that this letter was not acknowledged. Horton offered the purported text of the letter in his brief, but the letter is not included in the appendix prepared for the Court. This letter was not filed by the trial court, and the docket sheet does not reflect receipt of a letter around this time.

lack a legally cognizable interest in the outcome."). Accordingly, we find this argument meritless.

Horton also argues that he was detained illegally because the prisons which held him never possessed commitment papers ordering his detention. Horton assumes that if internal prison procedures were violated, then his due process rights were violated. His argument misunderstands relevant law. By pleading guilty, Horton has rendered this pretrial issue moot and has waived his right to object to errors that are non-jurisdictional. Finally, even if the paperwork Horton desired was issued, Horton would not have been released. Therefore, any error, if one occurred, was certainly harmless.

In each case of these alleged procedural deficiencies, Horton fails to establish that the alleged errors harmed or prejudiced him, or that he possessed any liberty interest. Accordingly, this Court will not blindly champion procedure and allow procedural minutia to obscure the fundamental fact that Horton was guilty as charged.

B. Effectiveness of Horton's Trial Counsel

Horton next argues that his trial counsel was ineffective. Questions of effectiveness of counsel are reviewed de novo, but findings of fact by a lower court regarding effectiveness of counsel are disturbed only if clearly erroneous. Becton v. Barnett, 920 F.2d 1190, 1192 (4th Cir. 1990).

A defendant claiming ineffective assistance of counsel must demonstrate both deficient performance and actual prejudice. Strickland v. Washington, 466 U.S. 668 (1984). When considering Horton's motion to withdraw his guilty plea, the trial court conducted an extensive evidentiary hearing regarding the effectiveness of trial counsel. The court noted that Horton had an extensive history of displeasure with his numerous appointed attorneys.[4] The court carefully evaluated

_____

[4] When appointing yet another attorney, the district court noted that it "appointed at various times, three of the most aggressive, experienced attorneys on its Criminal Justice Act panel to represent Mr. Horton, and he has fired each of them, being highly dissatisfied that no one quite sees things like he does." Order filed August 9, 1995.

10

trial counsel's performance and concluded that his performance did not fall below the objective standard of reasonableness. This finding is not clearly erroneous. Horton has thus failed to establish that his counsel's performance was inadequate, so his claim of ineffectiveness of counsel must fail.

C. Sufficiency of Evidence on the Firearm Charge

Horton next argues that the evidence presented at trial was insufficient to support his conviction for using and carrying a weapon in relation to a drug trafficking crime. Horton was stopped by police officers who suspected he was driving under the influence. He was arrested and searched at the police station; the search revealed crack cocaine. When officers conducted an inventory search of his car, they discovered a gun under his seat. Horton was thus charged with violating 18 U.S.C. § 924(c)(1), which forbids using or carrying a firearm in connection with a drug trafficking crime. At trial, Horton pled guilty to this charge.

The case of United States v. Bailey, 116 S. Ct. 501 (1995), was decided after his plea was entered. Bailey narrowed the permissible scope of the term "use" and required that "active employment" of a firearm be established to support a conviction under the "use" prong of the statute. Bailey did not alter the "carry" prong of the statute.

Although he does not explicitly do so, Horton appears to be making two separate claims under Bailey. First, he claims that the evidence at trial was insufficient to prove that he used or carried a weapon. Horton attempts to analogize to Bailey, but Bailey is inapposite. Bailey was convicted after a jury trial for possessing a weapon in his car's trunk. In contrast, Horton pled guilty to the firearm charge, and his gun was readily accessible under his car's driver's seat. Transporting a gun in a car with drugs continues to be sufficient to support a

_____

Additionally, this Court, being very solicitous of Mr. Horton's rights, allowed him to file a supplemental pro se brief in addition to the brief filed by his counsel. It is difficult to believe that any counsel would be satisfactory to Mr. Horton.

11

conviction as "carrying" a firearm, even after <u>Bailey</u>, certainly when the firearm is readily accessible, <u>see United States v. Hayden</u>, 85 F.3d 153, 161-62 (4th Cir. 1996); <u>United States v. Riascos-Suarez</u>, 73 F.3d 616, 623 (6th Cir.), <u>cert. denied</u>, 117 S. Ct. 136 (1996); <u>United States v. Willet</u>, 90 F.3d 404 (9th Cir. 1996); <u>Gaskins v. United States</u>, 925 F. Supp. 396 (D. Md. 1996), and, in some circumstances, even when the firearm is not readily accessible. <u>United States v. Mitchell</u>, ___ F.3d ___, No. 95-5792, 1997 WL 12115 (4th Cir. Jan. 15, 1997).

While Horton was admittedly not using the gun as "use" is defined in <u>Bailey</u>, he was certainly carrying the gun. Accordingly, the evidence would have been sufficient to support a conviction by a jury, and is sufficient to form an adequate factual basis for the acceptance of his guilty plea. <u>See</u> Fed. R. Crim. P. 11(f); <u>United States v. Crawford</u>, 932 F. Supp. 748, 752 (E.D. Va. 1996). Because Horton pled guilty, he waived all challenges to the factual basis of his plea as long as what he plead to was, in fact, criminal. <u>United States v. Broce</u>, 488 U.S. 563, 570 (1980); <u>United States v. Willis</u>, 992 F.2d 489, 490 (4th Cir.), <u>cert. denied</u>, 510 U.S. 857 (1993). Horton was carrying the weapon in relation to a drug transaction; that act remains criminal. Accordingly, Horton's conviction stands.

Second, Horton claims that there was no evidence that he was involved in drug trafficking. Under 18 U.S.C § 924(c)(1), a defendant must use or carry a firearm in relation to a drug trafficking crime.[5] At trial, Horton had ample opportunity to discuss the matter with his counsel. Horton at one point claimed the cocaine had been planted on him. The United States insisted that he must admit guilt as to a drug trafficking crime, and the trial judge carefully instructed Horton that he must admit guilt as to the drug trafficking charge in order for his plea to be accepted. The trial judge further commanded Horton to discuss the issue with his attorney; Horton did so and freely chose to plead guilty.

Whether evidence was sufficient to support a conviction should be determined in the light most favorable to the United States, and a con-

_____

[5] Horton apparently erroneously believes that the government must establish that the firearm was used or carried in relation to a crime of violence. 18 U.S.C. § 924(c)(1) requires no such showing.

12

viction should be upheld if any rational trier of fact could find defendant guilty. United States v. Reavis, 48 F.3d 763 (4th Cir. 1995). The evidence in Horton's case certainly could lead a rational trier of fact to conclude that Horton was engaged in a drug trafficking crime; he was found with seventeen rocks of crack cocaine, some marijuana, a razor blade, and around $ 100 in cash. Although Horton's objection was viable pre-Bailey, Horton did not object on these grounds at trial. Instead, he chose to enter a knowing and voluntary plea of guilty. This Court will not set aside the guilty plea, and we find the evidence sufficient to support Horton's conviction under 18 U.S.C. § 942(c)(1).

III. Other issues

In a pro se supplemental brief Horton submitted to the Court, Horton argues that it was plain error to sentence him for possessing crack cocaine or cocaine base. He argues that no evidence established that he was found with crack cocaine rather than regular cocaine. At Horton's guilty plea hearing, the government represented that it would have established at trial that Horton was found with seventeen rocks of crack cocaine or cocaine base. The record also contains lab reports, which indicate that the substance Horton possessed was crack cocaine or cocaine base. Most importantly, Horton pled guilty to possessing crack cocaine or cocaine base. By pleading guilty, he waived all right to challenge the factual basis of his conviction. Willis, 992 F.2d at 490 ("A knowing, voluntary, and intelligent guilty plea to an offense conclusively establishes the elements of the offense and the material facts necessary to support the conviction.").

In conclusion, none of Horton's arguments have merit. Because we find no reversible error committed by the District Court, we affirm Horton's convictions.

AFFIRMED

13