149 F.Supp.2d 891 (2001)
Cynthia E. BRISCO-WADE, Plaintiff,
v.
Mel D. CARNAHAN, et. al., Defendants.
No. 4:99CV807SNL.
United States District Court, E.D. Missouri, Eastern Division.
May 23, 2001.
*892 *893 Cynthia E. Brisco-Wade, Apartment A, St. Louis, MO, Pro se.
John J. Lynch, Denise G. McElvein, Attorney General of Missouri, Assistant Attorney General, St. Louis, MO, Bruce Farmer, Oliver and Walker, Columbia, MO, for Mel D. Carnahan, Dora B. Schriro, Pat Roll, Theresa Adams, Jane Doe, # 3, Unknown Dahl, Lieutenant, Janet Barton, Al Luebbers, defendants.

MEMORANDUM
LIMBAUGH, Senior District Judge.
Pro se prisoner plaintiff has filed this § 1983 action alleging that Missouri prison officials wrongfully detained her in Missouri prison facilities by improperly executing her concurrent Missouri and Kentucky sentences. She avers that her five-year Missouri sentence for felony theft was to run concurrently with a prior Kentucky sentence (on which she was on parole when receiving the Missouri sentence), and that said concurrent sentences were to be served back in Kentucky. She further avers that when she was finally transferred to the custody of the Kentucky Department of Corrections, she was informed *894 by Kentucky prison officials that she could not receive credit "for time served" while she was in custody of the Missouri Department of Corrections. Finally, she alleges a "conspiracy" by the defendants to wrongfully detain her in the Missouri prison system, and that they intentionally "breached" her plea agreement to have her serve her concurrent sentences in Kentucky. This matter is before the Court on remaining defendants Carnahan, Schriro, Luebbers, Barton, Roll, Adams, and Dahl's motion for summary judgment (# 70), filed December 5, 2000.[1]
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.[2]
Plaintiff is a former Missouri Department of Corrections (MDOC) inmate currently on parole under the supervision of the Missouri Board of Probation and Parole. On November 1, 1996, while out on parole from a Kentucky sentence, plaintiff appeared in St. Louis County Circuit Court before Judge James Hartenbach to withdraw her guilty plea to a felony charge of stealing over $150.00 and enter a guilty plea to the same charge. The guilty plea was accepted by the state court subsequent to the following discussion:

*895 THE COURT: Understanding that, ma`am, did you understand before entering your plea of guilty, with them not proving up any of your prior convictions, that the range of punishment was affectively [sic] from a day in the county jail up to seven years in the penitentiary?
THE DEFENDANT: Yes, sir.
THE COURT: Does the State have a recommendation here this afternoon?
MS. HARBIN: Yes, Your Honor. The State's recommendation is five years in the Missouri Department of Corrections, with no opposition to the defendant doing that sentence in the long-term cocaine treatment program if eligible.
MR. BRAYER: Your Honor, just to clarify the record on the deal, we had also put on there that the State is not opposed to the defendant doing her time in Kentucky and having the sentence run concurrent with the sentence being imposed in Kentucky.
What we think is probably going to happen is that Kentucky will not come and get her prior to the ___ until she is paroled from the Missouri Department of Corrections. So we wrote that on there, but in reality probably what will happen Kentucky will wait until she's paroled by M.D.C. and then come an execute their detainer at that time.
So we put that in there in case it may help her in some way, or there's some way that Kentucky may have bowed out, or Missouri can give her up, but we don't think that will happen.
That's why we want to try for the long-term program, if she qualifies. She understands if she doesn't qualify she will be put with the general population and serve out the normal time, what parole would be.
THE DEFENDANT: Can I ask a question?
THE COURT: Sure.
THE DEFENDANT: Is the drug treatment only cocaine?
THE COURT: It's only cocaine. If that's not the choice, then you won't qualify for it. I don't know why that is, apparently that's the case because it's the feeling of the people who deal with the substance abuse programs here in Missouri it's ____ the hardest addiction in the world to get rid of is the cocaine addiction, be it powder or crack. But cocaine is a harder addiction to get rid of.
Heroin, any of the other amphetamines, alcohol, any of the other substances, cocaine by virtue of their experience is the toughest one there is to shake, and that's the reason it's limited to cocaine.
THE DEFENDANT: Okay.
THE COURT: And maybe if that's not your drug of choice, if that's not the problem you've been having, then we aught to deal with that right now, because you're not going to qualify for the program. It's got to be cocaine addiction.
THE DEFENDANT: I have both, I have two addictions.
THE COURT: Cross addiction of cocaine?
THE DEFENDANT: Heroin.
THE COURT: Heroin, both. But cocaine is one of your addictions?
THE DEFENDANT: Yes.
THE COURT: Then I think you will qualify for the program.
Defendants' Exhibit J  Plea and Sentencing Transcript (for plaintiff's plea on November 1, 1996), pgs. 7-9. Following some further discussion, the Court went on to accept plaintiff's plea and set forth her sentence:
THE COURT: Okay. On your plea of guilty to the charge of Stealing Over the *896 Value of $150.00, which is a Class C felony, I am going to sentence you to serve five years in the custody of the Missouri Department of Corrections.
You are going to be sentenced under the provisions of the Revised Statutes of Missouri, Section 217.362, which is the long-term cocaine addiction program. And you're going to be sentenced into that program if in fact you qualify for the program.
And somebody's going to come and talk to you and find out whether or not you indeed possess all the qualifications or aren't excluded from the program for some other reason.
I think like crimes of violence and your history, that sort of thing. I know a brief review from Pat says none of that exists, and if there truly is a cocaine addiction it looks like you qualify for the program. But since we don't visit with the screening people, we can't make that guarantee to you.
In the event that you do not qualify for that program and you're required to serve your time ___ serve the five year sentence, the Court has no opposition to you serving that sentence in the State of Kentucky, should they choose to come and execute against their detainer and take you back to Kentucky. Is that on a probation revocation?
THE DEFENDANT: Parole.
THE COURT: A parole revocation. If they decide come and get you I have no problem doing whatever time you have to do down in Kentucky.
Once again, as Mr. Brayer stated, if they don't do that and decide to put a hold on you they can do whatever they will do. We can only hope that you get the help at the addiction program.
THE DEFENDANT: Yeah.
THE COURT: That's where we want you to go, but if everything else goes south on you and that doesn't happen, I hope Kentucky comes and gets you when it's time to get it done in the shortest possible time.
Defendants' Exhibit J, pgs. 10-12. Following the plaintiff's court appearance, Judge Hartenbach signed a "Judgment for Treatment" ordering the plaintiff to participate in the long-term cocaine addiction program, and signed the formal written "Judgment and Sentence" which in pertinent part states:
"The Defendant having no legal cause to show why judgment and sentence of this Court should not now be pronounced, the Defendant is sentenced to serve a term of imprisonment of (5) Year(s) in the custody of the Department of Corrections for the offense(s) charged; said sentence to run concurrently with sentence Defendant is presently serving in the State of Kentucky and receiving credit towards her Missouri Department of Corrections sentence from time in Kentucky. Defendant is sentenced to the Long Term Drug Treatment Program pursuant to § 217.362 R.S.Mo., if qualified. (emphasis added)
Therefore, it is ordered and adjudged by the Court that said Defendant be and is hereby committed to the custody of the Department of Corrections, for a period of imprisonment of (5) Year(s), for the offense (s) charged; said sentence to run concurrent with sentence Defendant is presently serving in the State of Kentucky. No opposition to Defendant serving said sentence in the State of Kentucky and receiving credit towards her Missouri Department of Corrections sentence from time in Kentucky. Defendant is sentenced to the Long Term Drug Treatment Program pursuant to § 217.362 R.S.Mo., if qualified; and that Defendant stand so *897 committed until this sentence is complied with or Defendant be otherwise discharged according to law. State ordered to pay Court costs." (emphasis added)
Defendants' Exhibit J.
On November 12, 1996 St. Louis County transferred custody of the plaintiff to the MDOC. Meanwhile, on February 2, 1996, during the time plaintiff spent as a pretrial detainee in the St. Louis County jail, Kentucky issued a Parole Violation Warrant on the plaintiff (for leaving the jurisdiction of Kentucky while on parole). Furthermore, on August 29, 1996 Kentucky notified St. Louis County that it was filing a detainer (based upon the February 1996 warrant) on plaintiff.
From November 12, 1996 through May 15, 1998 plaintiff was incarcerated in various MDOC facilities:

 Renz 11/12/96-12/4/96
 CTCC (Cremer) 12/4/96-12/31/96
 Renz 12/31/96-1/2/97
 Tipton 1/2/97-11/13/97
 Chillicothe 11/13/97-5/15/98

On March 21, 1997 Kentucky issued a second Parole Violation Warrant against the plaintiff for her Missouri conviction on November 1, 1996. On March 28, 1997 Kentucky notified the prison officials; the Records Office, at Tipton Correctional Center of its filing of a detainer against the plaintiff based upon the second warrant. On April 1, 1997 Jean Crane, Records Officer at Tipton, responded to Kentucky's notice of detainer and stated:
"Receipt of your warrant number(s) 27235 is acknowledged. Notations have been made on our records that Cynthia Wade, our register number 8861 will be wanted by you upon expiration of his/her sentence. At present, his/her conditional release date will be 7-30-2001, unless he/she is paroled prior to that date. You will be notified about 30 days prior to the discharge date in order that you may have an officer here to take him/her into custody."
Defendants' Exhibit L.
While incarcerated in the various MDOC facilities, plaintiff complained to her caseworkers that she believed that she should have been sent to Kentucky immediately following her sentence in November 1996 so that she could serve her Missouri and Kentucky sentences concurrently in Kentucky. She further wrote various Kentucky prison officials of her belief that she should be in the custody of the Kentucky Department of Corrections. Finally, on March 20, 1998 plaintiff filed an Informal Resolution Request (IRR) with the prison officials at Chillicothe.[3] In her IRR, plaintiff states:
"I was sentenced to 5 years to run current with my Kentucky Parole Violation. I should have been sent to the State of Kentucky according to D.O.C. Policy D.5-8.8. I am not grieving my sentence, but I am grieving departmental policy. Please make the necessary arrangements for my immediate transfer."
The action plaintiff specifically requested was "Immediate transfer to Kentucky per Policy and Procedure".
On April 7, 1998 Sherene Allen, Records Officer at Chillicothe, wrote Steve Durham, *898 General Counsel, Compact Administrator for the Kentucky Department of Corrections. In this letter, Ms. Allen stated:
"The Missouri Department of Corrections has received an order from a Missouri court stipulating Inmate Wade's Missouri case run concurrently with her Kentucky case. Inmate Wade is on parole from Kentucky and Warrant # 27235 was issued on March 21, 1997 for Parole Violation (Original Charge: Criminal Possession of Forged Instrument II). The Missouri Department of Corrections is obligated to notify you that inmate Wade is available for transportation to Kentucky. Please notify this office of your intentions with regard to Inmate Wade." (emphasis added)
It is unclear as to what plaintiff's status was at this time in connection with the Long-Term Drug Treatment Program.[4]
Shortly thereafter, an agreement was reached whereby Kentucky was to take custody of the plaintiff on May 13, 1998. On April 30, 1998 Ms. Allen informed the prison officials at Chillicothe that plaintiff was being taken into custody on May 13, 1998 by the Kentucky Department of Corrections. This same date, Ms. Allen wrote the Records Office of the Kentucky Department of Corrections confirming the May 13th transfer of custody date, and providing it with a copy of plaintiff's November 1, 1996 judgment and sentence. Defendants' Exhibit L.
Sometime between May 7th and May 11th, 1998 plaintiff was informed that her IRR had been upheld and that she was going to be transferred to the custody of the Kentucky Department of Corrections.
Upon arriving in Kentucky, plaintiff embarked on a campaign to recover damages for what she believed had been an "illegal detainment" of her in Missouri, to get Missouri to withdraw its detainer on her when she was transferred to Kentucky, and finally, to get Kentucky to give her credit "for time served" while she was in Missouri.[5] She also filed this lawsuit in July, 1999.
Missouri prison officials denied her IRRs seeking damages of $250.00 per day from November 1, 1996 to May 15, 1998. Plaintiff filed a state writ of habeas corpus in Kentucky arguing that if she were credited with the time she spent in Missouri, she would have satisfied her Kentucky sentence by July 1999. Plaintiff argued that she was entitled to the credit because the Missouri court had specifically ordered her Missouri sentence to run concurrently with the Kentucky sentence.
On October 29, 1999 a Kentucky state judge granted the writ and released her from confinement. The Kentucky state judge found that "Missouri's law and policy is to effectuate such concurrent sentencing and that Missouri law requires the state of Missouri to turn over individuals *899 sentenced to concurrent time to the sister state." It further found that "Missouri, despite the law and policy discussed above, failed to follow through in a fashion calculated to produce the result envisioned by the trial court. When the Petitioner [Plaintiff Brisco-Wade] was not transferred to the state of Kentucky she successfully appealed the denial of her transfer. Missouri ordered her transferred. Despite petitioner's requests, Kentucky took no affirmative action in effectuating the transfer during the 1½ years." The state court further found that (as of the time of the habeas proceeding) plaintiff should have been released from Missouri on conditional release as of January 1999; thus, it discharged Missouri's detainer. The state court's decision to grant the writ was affirmed by the Kentucky Court of Appeals on January 24, 2000.[6]
Meanwhile, Missouri granted plaintiff a conditional release, effective November 30, 1999. She remains on conditional release until July 30, 2001.
Defendants raise a myriad of grounds as to why they should be granted summary judgment on plaintiff's claims. They assert that plaintiff cannot maintain a § 1983 action against the defendants because none of them had any personal involvement or responsibility regarding any decision to transfer plaintiff so that she could serve her concurrent sentences in Kentucky. They further aver that Judge Hartenbach did not intend for plaintiff to serve her concurrent sentences in Kentucky, and that even if he did, he did not have the authority under Missouri law, including § 558.026 R.S.Mo., to order the MDOC to transfer plaintiff to Kentucky to serve her concurrent sentences. Defendants further contend that the case of Chitwood v. Dowd, 889 F.2d 781 (8th Cir.1989) is not only inapplicable, but is "bad law" not recognized by any Missouri state court. Finally, defendants assert that they are entitled to qualified immunity because they did not violate clearly established law.
In her complaint and all pleadings filed with the Court, especially in response to the defendants' summary judgment motion, plaintiff primary argument is that she should have been transferred immediately to Kentucky to serve her concurrent sentences. She believes that the responsibility for effectuating her transfer falls on the MDOC. Although the Court does not quarrel with the plaintiff's basic argument[7] regarding responsibility for the transfer, plaintiff has an insurmountable problem regarding the evidentiary record before the Court.
As for defendants Carnahan[8], Schriro, and Luebbers, plaintiff fails to provide any evidence of any action (or failure to take action) by these defendants pertaining to any decision to transfer her upon sentencing by the Missouri state court. Her claim(s) against these defendants are lodged solely on the basis of their position. She believes that as Governor, Director of the MDOC, and Superintendent of Renz Correctional Center, these supervisory defendants had the "duty" to ensure that her Missouri sentence *900 was executed in such a manner so as to run concurrently with her Kentucky sentence. It is well-settled that respondeat superior is not a basis for liability under § 1983. Keeper v. King, 130 F.3d 1309, 1314 (8th Cir.1997); Kulow v. Nix, 28 F.3d 855, 858 (8th Cir.1994); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir.1990). Under Missouri law, the Governor is neither the administrator or supervisor for Missouri prisons. Administrative authority lies with the director of the MDOC, whom is appointed by the Governor. Other than being a governor, plaintiff has provided no evidence that Carnahan had an administrative or legal duty to review inmates' records to ensure that sentences were executed properly. As for Schriro and Luebbers, "a general responsibility for supervising the operations of a prison is insufficient to establish personal involvement required to support liability." Keeper, at 1314 quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir.1995). Plaintiff has failed to state a claim against defendants Carnahan, Schriro, and Luebbers.
As for defendants Adams, Dahl, and Barton, plaintiff fails to make and support any factual allegations regarding their involvement in failing to have plaintiff transferred to Kentucky. Defendants Adams and Dahl are correctional officers. Plaintiff fails to provide any evidence that in the normal scope of their duties, they are to review inmates' records in order to ensure that sentences are executed properly. She fails to show that they were personally involved in or had direct responsibility for failing to have her transferred immediately upon being sentenced by the Missouri state court. In order to prevail on a § 1983 claim, a plaintiff must allege and prove that a defendant was personally involved in or had direct responsibility for the incident(s) that resulted in the alleged injury. Allen v. Purkett, 5 F.3d 1151, 1153 (8th Cir.1993); Martin v. Sargent, 780 F.2d 1334, 1335 (8th Cir. 1985). As for Barton, the undisputed evidence before the Court is that as a parole analyst with the Missouri Probation and Parole Board, she had access to the plaintiff's records and would be in a position to review them as to her Missouri sentence. However, the undisputed evidence also shows that defendant Barton had no knowledge of the plaintiff's claims until after plaintiff had been transferred.[9] Thus, plaintiff fails to provide any evidence that defendant Barton was personally involved in any decision regarding her transfer to Kentucky. Plaintiff has failed to state any § 1983 claims against defendants Adams, Dahl, and Barton.
As for defendant Roll, the undisputed evidence is that she did review plaintiff's records shortly after plaintiff was sentenced and knew that plaintiff was not going to be incarcerated in Kentucky. Defendant Roll attests that she believes the policy and practice of the MDOC is that anyone sentenced to and found qualified to participate in the Long-Term Drug Treatment Program participates in the program for a minimum of two (2) years at the Cremer Therapeutic Correctional Center (CTCC). She attests that "[t]he sentencing order for offender Wade sentenced *901 her to the long-term cocaine program, which offender Wade had to serve in Missouri. Offender Wade had to enter the long-term cocaine program, despite any other provisions in the sentencing order." Defendants' Exhibit D  Affidavit of Patricia Roll. Defendants fail to cite any authority, legislative or caselaw, to support this contention by defendant Roll. Assuming that defendant Roll is mistaken in her belief, and that she should have questioned the inconsistency of concurrent sentencing with an out-of-state prior sentence and participation in the long-term drug treatment program, the only claim viable against her would be one of negligence. There is no evidence of any deliberate indifference by defendant Roll as to plaintiff's complaint regarding the failure to transfer her to Kentucky or that she knowingly deprived plaintiff of a transfer to Kentucky. Negligence, even gross negligence, is not actionable under § 1983. See, Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Sellers By and Through Sellers v. Baer, 28 F.3d 895, 902-03 (8th Cir.1994); Davis v. Hall, 992 F.2d 151, 153 (8th Cir.1993); Roach v. City of Fredericktown, Mo., 882 F.2d 294, 297 (8th Cir.1989). Plaintiff has failed to state any claim under § 1983 against defendant Roll.
In her I.R.R., plaintiff contended that the prison officials were violating MDOC Procedure D5.8-8 regarding the procedure required when an inmate is serving an out-of-state sentence concurrently with a Missouri sentence.[10] One of the basic requirements of a § 1983 action is an alleged violation of rights secured by the Constitution and the laws of the United States. Even if defendants were in violation of this agency regulation and/or Missouri statute § 588.026.3; violations of prison policy, state agency regulations, state-court orders, or even state law fail to state a claim under § 1983. Ebmeier v. Stump, 70 F.3d 1012, 1013 (8th Cir.1995); Cole v. Bone, 993 F.2d 1328, 1334 (8th Cir.1993).[11]
As for any conspiracy claim, such a claim must also be dismissed. Plaintiff has failed to make and establish any factual allegations which sufficiently suggest a "meeting of the minds" to sustain a § 1983 conspiracy claim. Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir.1990); Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985).
For all of the above reasons, the defendants' motion for summary judgment will be granted. However, the Court wishes to briefly address a significant issue raised by the defendants with regard to their assertion of qualified immunity. Although the Court finds it unnecessary to address the particulars of the asserted qualified immunity defense since defendants' summary judgment motion will be granted on the merits of the plaintiff's claim, the Court does believe it necessary to address the specific assertion by the defendants that the case of Chitwood v. Dowd, infra. is inapplicable to the instant case; more importantly, that Chitwood fails to establish a liberty interest in the execution of sentences, especially concurrent state sentences.
Defendants assert that they are entitled to qualified immunity essentially because *902 plaintiff has failed to state a claim under the Fourteenth Amendment. They specifically assert that "Chitwood does not apply to Brisco-Wade's situation. Developments in law since the 1989 Chitwood ruling render it inadvisable to apply Chitwood to Brisco-Wade's situation." Defendants' Motion for Summary Judgment (# 70), pgs. 1-2. Defendants spend considerable time dodging responsibility for ensuring that any person sentenced to serve a period of incarceration serves that time as pronounced in a court of law. Given the defendants "pass the buck" attitude, it appears that once a person is sentenced in Missouri and custody is handed over to the MDOC, that person falls into a black hole at the mercy of some unidentified person somewhere in the Missouri penal system checking periodically that inmates are serving their sentences where and when as ordered.
Contrary to the defendants' inadequate assertion, Chitwood is very applicable to the plaintiff's situation. The fact that plaintiff was on parole at the time of her Missouri sentence is inconsequential to the basic holding in Chitwood.[12] The fact that no Missouri state court has ever followed the doctrine established in Chitwood is also of little concern since this Court is not bound by any state court opinion regarding the rights and liberties established by the United States Constitution. Furthermore, the fact is that no Missouri court has ever addressed the issue of whether Missouri law requires the Missouri sentencing court to turn over individuals sentenced to concurrent time to the sister state. No Missouri court has interpreted § 588.026.3 as it pertains to the concurrent sentencing of an individual with a out-of-state sentence while the individual is in the custody of the State of Missouri.
It is the defendants' contention that § 588.026 R.S.Mo. does not give a Missouri state judge authority to order the MDOC to transfer an individual to a sister state in order to execute concurrent sentences. Although the Court respects Judge Hartenbach's opinion regarding this issue, the fact remains that there is no caselaw (Missouri or federal) which supports this contention. On the contrary, the Eighth Circuit Court of Appeals has clearly rejected this notion. In Chitwood, supra., the plaintiff had escaped the custody of the Oklahoma Department of Corrections while incarcerated and fled to Missouri. In 1984, he pleaded guilty in Barry County, Missouri to a second-degree burglary charge. He received a seven (7) years sentence to run concurrent with the remainder of his Oklahoma sentence. He was transferred to the custody of the Missouri Department of Corrections. Chitwood, at 782.
Chitwood then pleaded guilty to charges of forgery in Boone County, Missouri. That court sentenced him to two three (3) years concurrent terms of imprisonment to run consecutively to the Barry County and Oklahoma sentences. Chitwood wrote Missouri and Oklahoma prison officials numerous times inquiring as to whether his Barry County and Oklahoma sentences were running concurrently. The few replies he received simply failed to answer *903 his inquiries in any meaningful way. He filed state habeas petitions which were denied. Missouri would not release him to Oklahoma. Finally, in 1988, as his prison time on the Barry County sentence was running almost to completion without any time credited against his Oklahoma sentence, he filed a federal habeas petition challenging the execution of his concurrent sentencing. Id., at 782-84. The federal district court granted the writ and the State of Missouri appealed.
Among the grounds raised (and rejected) by the Eighth Circuit Court of Appeals was Missouri's contention that Chitwood had failed to establish a violation of his constitutional or federal rights. Missouri asserted that Chitwood did not have a legitimate expectation, protected by due process, that he would be transferred to Oklahoma to serve his Barry County sentence concurrently with his Oklahoma sentence. Missouri asserted this argument despite the fact that the Barry County circuit court had specifically stated that Chitwood's Barry County sentence would run concurrently with the remainder of his Oklahoma sentence, and Missouri statute 558.026.3 provides that "[a] court may cause any sentence it imposes to run concurrently with a sentence an individual is serving or is to serve in another state [or in a federal correctional center"[13]]. Missouri argued that the Barry County sentencing court had no authority to tell the MDOC where prisoners were to be incarcerated. Missouri interpreted § 558.026.3 to operate only when a prisoner is already in the custody of another state; thus, Missouri courts did not have the authority to order the MDOC to transfer an inmate to the custody of another state. Id., at 786.
Acknowledging that the Barry County sentence did not specifically order that Chitwood be transferred to Oklahoma and that § 558.026.3 does not contain any affirmative language regarding the transfer of inmates to other jurisdictions, the appellate court still refused to accept the State's "restrictive view of the Missouri courts' power". Id., at 786. It found that
"[a] Missouri court's sentence has meaning only if the Department of Corrections has the duty to execute the sentences according to the court's instructions. The courts are given the authority to sentence defendants, not the Missouri Department of Corrections. Chitwood's sentence implicitly requires that Chitwood be transferred to Oklahoma, for that is the only course of action that will ensure that the Oklahoma sentence will run concurrently with the Barry County sentence."
Id., at 786.
Upon review of § 558.026.3, the Eighth Circuit did not agree with the State's contention that this statute did not confer upon Missouri courts the power to order transfer of a defendant to another jurisdiction. Instead, "the statute on its face indicates that the legislature intended to broaden the courts' discretion to order transfer." Id., at 786. It found that to accept the State's interpretation of § 558.026.3 would mean that Missouri courts could impose sentences concurrently with out-of-state sentences only when the Missouri courts did not have custody of the individual. "Such an interpretation would so restrict the statute as to nullify it." Id., at 786. The Court concluded that "the Department of Corrections had a duty to execute the sentence of the Barry County circuit court, and that the court had the *904 authority to sentence Chitwood to serve his Barry County sentence concurrently with his Oklahoma sentence in Oklahoma." Id., at 786.
Most importantly, the Eighth Circuit held that Chitwood had a legitimate expectation that the Department of Corrections would transfer him to Oklahoma. "Under Missouri statute, the discretion to sentence the defendant is vested in the trial court. One element of that discretion is found in section 558.026.3. When the trial court exercises its discretion under the statute, a defendant has a legitimate expectation that he will be deprived of his liberty only to the extent determined by the court. That expectation is a liberty interest, protected by due process and enforceable by way of habeas corpus." Id., at 786.[14]
Chitwood cannot be read so narrowly as to restrict its holding to only cases in which a prisoner challenges the execution of his or her sentence through habeas corpus. To do so would deprive individuals from rightfully utilizing § 1983 to stop state actors; i.e. prison officials, from undermining a protected liberty interest in having their prison sentences executed lawfully. Furthermore, Judge Hartenbach's "intention" is immaterial since it is clear that he ordered plaintiff's sentences to run concurrently, and the only way to effectuate that order was to have plaintiff transferred to Kentucky. The defendants' argument that plaintiff somehow "disavowed" any expectation that she would be transferred to Kentucky because she had been ordered to participate in the long-term drug treatment program is meritless for several reasons. Firstly, it may be Ms. Roll's "practice and experience" that sentencing an offender to the drug treatment program "overrides" any other provision in the sentencing order; however, there is no statutory or caselaw authority to support this belief. Secondly, there is no evidence before this Court that plaintiff was enrolled in the program. Her stay at CTCC was barely four (4) weeks; wherein Ms. Roll attested that participants in the program stayed in the program at CTCC for two (2) years. Thirdly, assuming that plaintiff was enrolled in the program, she ended up being transferred while still presumably being a participant in the program. Finally, the defendants may not look upon the Chitwood case favorably but the fact remains that there is no a single Missouri state or federal case which undermines or overrules its holding. Defendants' argument that Chitwood allows the federal courts to "meddle" in or create a state mechanism where none existed before (i.e. that Chitwood creates a mandatory interstate prisoner transfer system in § 558.026.3) is meritless. The federal courts often "meddle" in state procedures when such procedures violate peoples' protected *905 constitutional and civil rights. As counsel for defendants is well-aware, many learned individuals consider the St. Louis Desegregation case to have been a prime example of a federal court interfering with a state mechanism.
Chitwood clearly established that an inmate in Missouri has a legitimate expectation that s/he will be deprived of his or her liberty only to the extent determined by a court. That expectation is a constitutionally protected liberty interest and when an inmate is sentenced to a Missouri sentence to run concurrently with an out-of-state sentence, such an inmate has a legitimate expectation that the MDOC would transfer him or her to the jurisdiction of the sister state so that the sentences may run concurrently. It is clear to this Court that plaintiff had a constitutionally protected liberty interest in being transferred to Kentucky upon her Missouri sentencing so that her Missouri and Kentucky sentences could run concurrently as ordered.
Although plaintiff's established constitutional rights were violated, she unfortunately failed to establish who within the Missouri penal system had the duty to ensure that she would be transferred. It appears to this Court that someone recognized the existence of that duty because her grievance notifying prison officials of the violation was remedied almost immediately. If plaintiff had filed her I.R.R. back in November 1996 and thereafter, and these I.R.R.s had been ignored, this case would have taken a very different road with a very probable different result for some of the defendants.
It may be of great benefit to the MDOC to review its policies and procedures regarding the execution of concurrent instate and out-of-state sentences when the individual is in the custody of the State of Missouri, especially in light of Chitwood. Chitwood remains good law despite the passage of time until a federal court overrules it or an appellate court offers a different interpretation of § 558.026.3 with respect to such concurrent sentencing of individuals.
Based upon the foregoing grounds, defendants are entitled to summary judgment on the plaintiff's § 1983 claims.
NOTES
[1] The Court's delay in addressing this motion is due largely in part to a dispute concerning the matter of arbitration of this case.
[2] The Court's declaration of facts in this case are extracted not only from the defendant's statement of uncontroverted facts, but from documents submitted by all parties as part of the evidentiary record in this case.
[3] Although the defendants refer to this IRR as being lodged by the plaintiff on April 20, 1998, the IRR clearly shows that the plaintiff had dated it "3/20/98". Defendants' Exhibit M. The IRR has an "IRR Log Number" of "XX-XX-XX-XX-XXX" which might indicate a filing date of April 20, 1998; however, a filing date of April 20, 1998 would make little sense in light of the above-referenced letter of April 7, 1998.
[4] According to Patricia Roll, MDOC records officer during the relevant time-period, any inmate sentenced to the Long Term Drug Treatment Program had to serve said program for two (2) years at the Cremer Therapeutic Correctional Center (CTCC). Defendants' Exhibit D  Affidavit of Patricia Roll. Based upon Ms. Roll's affidavit and the records submitted by defendants, plaintiff was housed at CTCC for only four (4) weeks. There is nothing in the record to explain why plaintiff's stay was for such a short duration, or if her short stay was due to ineligibility for the program. The Court assumes that as of April-May, 1998, plaintiff had not been enrolled in the drug treatment program for an extended period of time.
[5] Kentucky had informed plaintiff that it could not give her credit "for time served" while she was in the custody of Missouri and not Kentucky.
[6] Copies of the relevant documents are scattered throughout the court file; however, for ease of access, a copy of the state court memorandum and order granting the writ is marked as Exhibits 10 and 11 to Document # 34. A copy of the appellate decision affirming the granting of the writ is attached to Document # 38.
[7] The Court will address the issue of duty to transfer later in this memorandum.
[8] The defendants have filed a suggestion of death as to the late Governor Mel D. Carnahan. For purposes of this memorandum, issues pertaining to this defendant will still be addressed and all rulings pertaining to this defendant will be considered applicable.
[9] In fact, the undisputed evidence before the Court is that plaintiff did not inform any prison official of her belief (or grievance) that she should be transferred to Kentucky in order to carry out the concurrent sentencing handed down by the Missouri state court until March 1998 when she filed an I.R.R. She claims that she told her caseworkers and wrote prison officials in Kentucky, but there is no evidence other than the March 1988 I.R.R. that any Missouri prison official was aware of plaintiff's complaint. In fact, the undisputed evidence, is that within six (6) weeks of plaintiff filing her I.R.R. bringing this matter directly to the attention of the prison officials, her transfer was arranged.
[10] A copy of MDOC Procedure D5-8.8 can be found as Exhibit 2 to Plaintiff's Document # 58.
[11] For these same reasons, any claim plaintiff may be pursuing against these defendants for "breach of plea agreement" is not viable under § 1983. A contract claim has no basis in the Constitution or the laws of the United States.
[12] Among other things, defendants assert that Chitwood is inapplicable because in Chitwood the plaintiff was seeking to be transferred back to the custody of the Oklahoma Department of Corrections; where as in the present case, plaintiff was on parole, so there was no one to take "custody" of plaintiff. This argument is meritless. Each of the parole violation warrants (upon which two detainers were filed) clearly state that upon the arrest of the plaintiff she was to be delivered to the "custody of the Kentucky Department of Corrections". In fact, when plaintiff was finally transferred, she was taken into custody by the Kentucky Department of Corrections and immediately incarcerated.
[13] The 1995 amendment to § 558.026.3 inserted the phrase "or in a federal correctional center".
[14] In Hawk v. Georgia Department of Corrections, 44 F.3d 965 (11th Cir.1995), a prisoner sued under § 1983 seeking injunctive relief and damages for the failure or refusal of the Georgia prison authorities to release him into the custody of Texas in order to serve his concurrent Georgia and pre-existing Texas sentences. The 11th Circuit Court of Appeals held that the Commissioner of Georgia Department of Corrections was entitled to qualified immunity. The Court compared plaintiff Hawk's case with Chitwood. It found that unlike Missouri statute 558.026.3 which bestowed upon the sentencing court the authority to order a Missouri sentence to run concurrently with an out-of-state sentence which would implicitly require the transfer of the prisoner to the other state, Georgia did not have a comparable statute. Hawk, at 967. The 11th Circuit found that the law was not clearly established since its sentencing statute did not overtly confer the power or authority of a Georgia judge to impose concurrent sentences or allow credit for time served while serving in another jurisdiction; and no case-law existed regarding possible statutory authority for concurrent sentencing. Id., at 967.