Betty KASSULKE, Warden, Kentucky
Correctional Institution for
Women, Appellant,

v.

Cynthia Elaine BRISCOE–
WADE, Appellee.

No. 2000–SC–0166–DG.

Supreme Court of Kentucky.

March 20, 2003.

As Modified on Denial of Rehearing
June 12, 2003.

Stephen P. Durham, Keith Hardison, Department of Corrections, Office of General Counsel, Frankfort, Counsel for Appellant.

Marguerite Neill Thomas, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellee.

KELLER, Justice.

## I. ISSUE

While on parole from a ten (10) year Kentucky prison sentence, Appellee was convicted of a felony offense in the State of Missouri. A Missouri trial court sentenced Appellee to five (5) years for the new conviction, but ordered its sentence to run concurrently with Appellee's previous Kentucky sentence. Upon her return to Kentucky after twenty-one (21) months in the custody of the Missouri Department of Corrections ("MDOC"), Appellee sought habeas corpus relief and a Kentucky circuit court released her from custody after determining that she was entitled to custody credit on her Kentucky sentence for the time that she was incarcerated in Missouri. Was Appellee entitled to credit against her Kentucky sentence for the time she served in Missouri? Because, in Kentucky, a parolee receives no credit against his or her sentence for the period of time spent on parole from that sentence, and the Mis-

souri trial court could not create credit on Appellee's Kentucky sentence by designating its own sentence to run concurrently with Kentucky's, Appellee was not entitled to credit on her Kentucky sentence for the time she served in Missouri.

## II. FACTUAL BACKGROUND [1]

In 1982, Appellee received a Second-Degree PFO-enhanced, ten (10) year prison sentence for Second-Degree Criminal Possession of a Forged Instrument from Henderson Circuit Court. After Appellee's final sentencing for that offense, when the Kentucky Department of Corrections ("KDOC") originally calculated serve-out dates for that sentence, Appellee's maximum expiration date was in April 1992, and her minimum expiration date was in October 1989. In other words, if Appellee had remained continuously incarcerated until October 1989, and was credited with the full amount of statutory good time credit [2] at that time, she would be released from her Henderson Circuit Court sentence. And, if Appellee remained continuously incarcerated, but did not receive the maximum statutory good time credit, she would be released at some point after her initial minimum expiration date, but no later than April 1992, when she would have satisfied the sentence in full.

Appellee, however, did not remain continuously incarcerated until her sentence expired. Instead, she spent over twelve (12) years on parole following three (3) separate grants of parole from Kentucky

---

1. Much of the factual background to this action, from the Missouri side of the fence, may also be found in *Brisco–Wade v. Carnahan,* 149 F.Supp.2d 891 (E.D.Mo.2001) (in which the trial court granted summary judgment for the defendants in Appellee's *pro se* § 1983 action against a number of Missouri officials—including the then-Governor Carna-

han—and MDOC employees for improperly executing her Missouri sentence by wrongfully detaining her in Missouri prison facilities). We note that the federal district court utilized an alternative spelling of "Briscoe–Wade."

2. KRS 197.045(1).

Parole Board—in 1984, 1987, and 1993. On each occasion, Appellee ultimately violated the terms and conditions of her parole release and was returned to custody. Accordingly, KDOC recalculated her maximum and minimum expiration dates as provided in KRS 439.344 without credit for the time that she had spent on parole. When, in 1993, Appellee was released for the third time on supervised parole, she absconded from parole supervision, traveled to Missouri, and while there committed and was convicted of a felony theft offense. In November 1996, a Missouri trial court sentenced her to a five (5) year term of imprisonment, but ordered its sentence to run concurrently with Appellee's previous Kentucky sentence. The trial court's order read, in relevant part:

> Therefore, it is ordered and adjudged by the Court that said Defendant be and is hereby committed to the custody of the Department of Corrections, for a period of imprisonment of (5) Year(s), for the offense(s) charged; *said sentence is to run concurrent with sentence Defendant is presently serving in the State of Kentucky. No opposition to Defendant serving said sentence in the State of Kentucky and receiving credit towards her Missouri Department of Corrections sentence from time in Kentucky.* Defendant is sentenced to the Long Term Drug Treatment Program pursuant to § 217.362 RSMo., if qualified; and that Defendant stand so committed until this sentence is complied with or Defendant be otherwise discharged according to law. (Emphasis added).

It appears that both the Missouri trial court and Appellee contemplated that the MDOC would immediately release custody of her to Kentucky's parole violation detainer—lodged by KDOC after it received notice of Appellee's new felony conviction—so that Appellee could begin serving her concurrent Missouri sentence after being recommitted to a Kentucky correctional facility for violating parole on her existing Kentucky sentence. Despite the language contained in the Missouri trial court's final judgment and the fact that KDOC officials notified Missouri on three (3) separate occasions that Kentucky desired Appellee's return and asked Missouri to give KDOC thirty (30) days notice before releasing Appellee, the MDOC authorities instead incarcerated Appellee in various MDOC facilities for approximately eighteen (18) months between November 1996 and May 1998. In April 1997, in response to KDOC's requests, the MDOC notified Kentucky that Appellee's expected release date was July 30, 2001—a date which, although identified in the correspondence as Appellee's next "conditional release date," actually represented Appellee's "maximum aggregate release date" under the MDOC's sentencing calculations.[3]

Approximately a year later, on April 7, 1998, and apparently in response to a successful grievance filed by Appellee, the records officer of the facility where Appellant was incarcerated wrote to notify KDOC "that Inmate Wade is available for transportation to Kentucky. Please notify this office of your intentions with regard to Inmate Wade." KDOC indicated its willingness to reclaim custody of Appellee, and informed MDOC that it would come to Missouri to take custody of Appellee in mid-May, 1998. The MDOC records offi-

---

3. After crediting Appellee with 104 days of jail custody credit against her sentence, the MDOC's sentencing calculations established Appellee's "maximum aggregate release date" as July 30, 2001, her "conditional release date" as November 30, 1999, and her "time credit release date" as January 30, 1999.

cer at Appellee's institution then wrote KDOC confirming this arrangement and further stated:

> Enclosed is a copy of the Sentence and Judgment from St. Louis County, Missouri indicating her Missouri charges are running concurrent with your time. Please mark your records to show that the Missouri Department of Corrections will need the inmate returned to us upon completion of your charges to serve any time remaining on her Missouri sentence.

Appellee was returned to Kentucky, and on June 3, 1998, the Kentucky Parole Board revoked Appellee's parole following a final parole revocation hearing at which Appellee stipulated to her violation. Following her parole revocation, KDOC credited Appellee only with "P.V. Time Credit" for the forty-one (41) days between the time when the MDOC informed KDOC that Appellee was available for transport and the time when KDOC actually accepted custody of Appellee from Missouri, and did not credit against Appellee's Kentucky sentence any of the remaining time that Appellee served on Missouri's concurrent sentence. As such, KDOC calculated Appellee's maximum sentence expiration date on her Kentucky sentence to be August 6, 2004 and her minimum expiration date to be February 2, 2002. KDOC lodged the Missouri judgment as a detainer and informed the MDOC that it would notify Missouri prior to Appellee's actual release

date "in order for arrangements to be made to assume custody."

Appellee filed a habeas corpus action in which she originally sought only removal of the Missouri detainer and argued only that satisfaction of her Kentucky sentence would necessarily satisfy the concurrent Missouri sentence. Subsequently, but without any modification of Appellee's affidavit in support of a writ of habeas corpus, Appellee's counsel argued that, by virtue of the Missouri court's judgment imposing a concurrent sentence, Appellee was entitled to credit on her Kentucky sentence for all of the time she was in custody in Missouri, and with such credit, Appellee had satisfied her Kentucky sentence and was entitled to immediate release from custody. On October 19, 1999—over two (2) years before Appellee's KDOC-calculated minimum expiration date for her Kentucky sentence, and over a month before Appellee's MDOC-calculated conditional release date on her Missouri sentence—the trial court granted Appellee the relief she sought. In doing so, the trial court reasoned that it was required to give Appellee credit on her Kentucky sentence for the time that she served on her concurrent Missouri sentence (and, apparently, additional credit for meritorious good time[4] that Appellee "would have received" if the Missouri custody credit were included in Appellee's sentence calculation[5]) in order to give "full faith and credit to another

---

4.  KRS 197.045(3):

> An inmate may, at the discretion of the commissioner, be allowed a deduction from a sentence not to exceed five (5) days per month for performing exceptionally meritorious service or performing duties of outstanding importance in connection with institutional operations and programs. The allowance shall be an addition to computation of time for good conduct and under the same terms and conditions and without regard to length of sentence.

*Id.*

5.  The record does not reflect what "exceptionally meritorious service" or "duties of outstanding importance in connection with institutional operations and programs" that Appellee performed. And, we observe that, to the extent that it was based upon an anticipated amount of *meritorious good time*, the trial court's findings fail to demonstrate that Appellee was entitled to immediate release from custody.

state's judgment," to effectuate the Missouri trial court's intentions, and to avoid infringing upon Appellee's Fourteenth Amendment liberty interest in receiving the sentence for which she bargained. As to the detainer issue, the Court concluded that:

> [D]ue to her incarceration in Kentucky, she has not been subject to a complete review by the Missouri Department of Corrections. Since she was incarcerated in Kentucky four months prior to her Missouri parole date, no good time calculation was made. Accordingly, Missouri regulations indicate petitioner should have been released from Missouri on conditional discharge on January 30, 1999. As such the detainer from Missouri is discharged. Regardless of this incomplete calculation, petitioner is due to completely satisfy her Missouri sentence on November 30, 1999. During the pendency of any appeal, this issue may become moot.

Accordingly, the Court ordered "that the petitioner be immediately released from custody," and "that the detainer lodged by the State of Missouri is hereby removed and adjudged null and void." The parties agreed that, during the pendency of this appeal, Appellee would be released from custody under a $5,000.00 third-party surety bond with conditions attached designed to guarantee that the trial court could "keep tabs on" Appellee's whereabouts during the pendency of the appeal.

We granted Appellant's motion for discretionary review from an opinion in which the Court of Appeals summarily affirmed the trial court, and we now reverse and remand this matter to the trial court for it to vacate its prior orders, deny Appellee's petition for a writ of habeas corpus, and recommit Appellee to the custody of KDOC to serve the remaining balance of her prison sentence.

## III. ANALYSIS

### A. CREDIT ON KENTUCKY SENTENCE FOR MISSOURI INCARCERATION

■ As the central question in any habeas corpus case is whether the inmate has shown "probable cause that he is being detained without lawful authority,"[6] the dispositive issue in this case is whether Appellee was entitled to custody credit on her Kentucky sentence for the time she spent incarcerated in Missouri under a sentence ordered to run concurrently with her Kentucky sentence. Appellant disputes Appellee's entitlement to such credit, and, in so doing, primarily relies upon *Rosenberg v. Defew*,[7] in which the Court of Appeals held that KRS 533.060(2), which prohibits a parolee from receiving the benefit of concurrent sentencing if he or she commits a new felony offense while on parole,[8] prohibits KDOC from crediting a former parolee's sentence with time served for a felony committed in another jurisdiction during the term of parole.[9] As neither party in *Rosenberg v. Defew* sought discretionary review, the issue is largely one of first impression for this Court. And, in light of previous Kentucky precedent interpreting the KRS 533.060(2) pro-

---

6. KRS 419.020.

7. Ky.App., 862 S.W.2d 334 (1993).

8. *See* KRS 533.060(2) ("[W]hen a person has been convicted of a felony and is committed to a correctional facility maintained by the Department of Corrections and released on parole ... and is convicted or enters a plea of guilty to a felony committed while on parole ... the period of confinement for that felony shall not run concurrently with any other sentence.").

9. *Rosenberg v. Defew, supra* note 7 at 335.

hibition against concurrent sentences as applicable not to the conviction from which a defendant has been paroled, probated, or conditionally released, but to the "new conviction" committed during the term of release,[10] and our conclusion that KRS 533.060(2)'s prohibition against concurrency applies only to a subsequent sentence imposed in Kentucky, we find that KRS 533.060(2) is not germane to this inquiry, and, as such, we disagree with the previous analysis of this issue by the Court of Appeals in *Rosenberg v. Defew*.

Although we find no support for Appellant's position in KRS 533.060(2), we hold that, under KRS 439.344, KDOC properly denied custody credit to Appellee for the time she spent incarcerated in Missouri. KRS 439.344 states that "[t]he period of time spent on parole shall not count as part of a prisoner's maximum sentence except in determining parolee's eligibility for a final discharge from parole as set out in KRS 439.354." [11] Our predecessor applied this provision as written [12] and, in an opinion addressing a statutory predecessor to KRS 439.344 that granted the Parole

Board discretion as to whether the period of time spent on parole was to be credited towards the underlying sentence, the Court was persuaded by the view "that time served by the appellant in a federal prison while technically on parole from the state penitentiary ... should not be considered as creditable parole time." [13] As Appellee's parole was not revoked until after she was returned to Kentucky,[14] the time she spent incarcerated in Missouri under her Missouri sentence, but on parole, did not count towards her Kentucky sentence.

Appellee maintains that the trial court correctly credited her with the time she served in Missouri, and argues that the distinguishing and dispositive feature of this case is that the Missouri trial court ordered its five (5) year sentence to run concurrently with Appellee's Kentucky sentence. Of course, although "a second judgment which provides that its sentence shall run concurrently accords the convicted defendant the right to have the time served on the first sentence count credited

---

**10.** *See Gavel v. Commonwealth,* Ky., 674 S.W.2d 953, 954 (1984) ("We hold that the trial court may run the state sentence concurrently or consecutively with the federal sentence [for a conviction during a term of probation on the state sentence] because KRS 533.060(2) is not applicable to the facts in the present case. *The conviction referred to in that section is the subsequent one, not the first.*" (emphasis added)); *Lattimore v. Corrections Cabinet,* Ky.App., 790 S.W.2d 238, 240 (1990) (rejecting Appellant's Ex Post Facto claim and holding that "KRS 533.060(2) has no application to appellant's first sentence for armed robbery committed in 1973. It merely specifies when his subsequent sentences shall begin to be served, by providing that they shall be consecutive to his previous sentence.").

**11.** KRS 439.344.

**12.** *See Stokes v. Howard,* Ky., 450 S.W.2d 520 (1970) (In its entirety, the opinion reads: "The sole question on this appeal being

whether a parole violator, who subsequently committed and was convicted of other felonies, is entitled to credit for time spent out on parole toward the completion of his sentences, the answer is that he is not. The judgment denying habeas corpus is affirmed." (citations omitted)).

**13.** *Kirkman v. Jones,* Ky., 346 S.W.2d 776, 777 (1961).

**14.** *Cf. Commonwealth v. Polsgrove,* 231 Ky. 750, 22 S.W.2d 126, 128 (1929) ("It follows that Bender was not serving the remainder of his first sentence while he was serving his second sentence, and did not begin to serve it until his parole had been actually revoked by the board of charities and corrections."). KRS 439.352 does not affect the analysis. *See Anglian v. Sowders,* Ky.App., 566 S.W.2d 789, 791 (1978).

against the second sentence," [15] there is no dispute in this case as to whether Appellee should have received, or was receiving, credit on her second sentence (Missouri's) for the time served on her first sentence (Kentucky's) because every day Appellee served in Kentucky was also credited against her Missouri sentence. Instead, Appellee's argument turns the concept of concurrent sentences—not to mention the Missouri trial court's order itself [16]—on its head by claiming entitlement to credit on her *first* sentence for the time served on her *second* sentence. However, the only way that the Missouri trial court's order for a concurrent sentence could have been given its intended effect was if Missouri tendered, and Kentucky accepted, custody of Appellee.[17] Kentucky and Missouri are separate sovereigns, and Kentucky is not required to extend any full faith and credit to Missouri's decision to run its sentence concurrently [18]—i.e., Kentucky could render the sentences de facto consecutive by refusing to accept transfer of custody [19] —and, accordingly, Kentucky cannot be required to give full faith and credit to Missouri's order by applying Appellee's

---

**15.** *Lemon v. Corrections Cabinet*, Ky.App., 712 S.W.2d 370, 371 (1986), *citing Rodgers v. Wingo*, Ky., 467 S.W.2d 369, 370 (1971).

**16.** We would observe, however, that Missouri's final judgment appears to contemplate concurrent sentences as we customarily understand them in that the judgment states that the trial court had "[n]o opposition to Defendant serving said sentence in the State of Kentucky and receiving credit *towards her Missouri Department of Corrections sentence from time in Kentucky.*"

**17.** *See Brisco–Wade v. Carnahan, supra* note 1 at 904 ("[The Missouri trial judge] ordered plaintiff's sentences to run concurrently, and *the only way to effectuate that order was to have plaintiff transferred to Kentucky.*" (emphasis added)); *Isreal v. Marshall,* 125 F.3d 837, 839 (9th Cir.1997) (where, ironically, it was the State of Missouri that would not grant credit for time served in a foreign jurisdiction, and the court held: "[t]herefore, in order to effectuate California's concurrency mandate, California law requires the California Department of Corrections ("CDOC") to permit appellant's transfer to Missouri."). *Cf. Meagher v. Clark,* 943 F.2d 1277, 1284 (11th Cir.1991); *Millard v. Roach,* 631 A.2d 1217, 1222–23 (D.C.1993) ("Only if appellant were transferred back to the federal authorities could the sentencing intention of the state trial court be carried out."); *Clark v. State,* 321 S.C. 377, 468 S.E.2d 653 (1996) ("[T]he only way to effectuate a state trial court's order that a state sentence run concurrently with a prior federal sentence is to have the defendant returned to federal custody to serve his federal sentence."). We also observe that, in published Kentucky cases addressing issues relative to a Kentucky trial court's decision to order the sentence for a felony conviction to run concurrently with a foreign jurisdiction's sentence, the inmate was surrendered to the other jurisdiction in order to effectuate the Kentucky court's order. *See Brock v. Sowders,* Ky., 610 S.W.2d 591 (1981); *Hudson v. Commonwealth,* Ky., 932 S.W.2d 371 (1996). *See also* KRS 532.115.

**18.** *See Taylor v. Sawyer,* 284 F.3d 1143, 1151 (9th Cir.2002); *Id.* at 1153 n. 11; *Jake v. Herschberger,* 173 F.3d 1059, 1065 (7th Cir. 1999) ("[A] determination as to concurrence of sentence made by one sovereign does not bind the other."); *Meagher v. Clark, supra* note 17 at 1284; *United States v. Sackinger,* 704 F.2d 29, 32 (2nd Cir.1983) ("[U]nder the dual sovereignty principle Sackinger could not, by agreement with state authorities, compel the federal government to grant a concurrent sentence."); *Clark v. State, supra* note 17 at 380, 468 S.E.2d 653 ("Although a state trial judge may properly order the sentences which he or she imposes to run concurrently, or consecutively, to each other, a state court is without authority to modify or place conditions on a sentence from a foreign jurisdiction."). *See also Taylor v. Sawyer, supra* at 1150–1151 (explaining that, as to the dual sovereignty principle, issues of federal supremacy are inapplicable, and vis-a-vis a state jurisdiction, the United States Government occupies the role of an equal sovereign, just as another state jurisdiction would).

**19.** *See infra* note 28.

custody credit from Missouri against her Kentucky sentence.[20] Even the primary authority upon which Appellee bases her argument for credit recognizes that one sovereign's order for a concurrent sentence cannot bind another sovereign.[21] Courts have rejected the argument that due process requires a jurisdiction to grant custody credit for time an inmate served under a concurrent sentence both imposed by and served in a separate jurisdiction[22] and have determined that they lack the authority to order such custody credit.[23]

■ Although Appellee argues, and the trial court concluded, that Appellee was entitled to credit for her Missouri prison time under the holding under *Chitwood v. Dowd*,[24] we find the holding of that case, and the other authority upon which Appellee relies, inapplicable. Although we observe some factual similarity between *Chitwood* and the case at bar,[25] the relief sought by the prisoner, and more important, *the relief granted* by the Eighth Circuit Court of Appeals, distinguishes *Chitwood* from today's case. In *Chitwood*, the federal district court had granted habeas corpus relief by "ordering Chitwood transferred to the Oklahoma department of corrections within thirty days ... [and] unconditionally releas[ing] Chitwood from serving any remaining time on ... his

**20.** *Jake v. Herschberger, supra* note 18 at 1066 ("The state court's designation of his state sentence as concurrent with his prior federal sentence created no obligation on the Attorney General to provide him with credit for time served in the state prison."). *Cf. Pinaud v. James*, 851 F.2d 27, 32 (2nd Cir.1988) ("Because the state and the United States are separate sovereigns, the state judge has no power to enforce such a promise. Pinaud is not entitled to have us enforce it indirectly by ordering that the federal sentence be reduced by the time served on the state sentence.").

**21.** *See Chitwood v. Dowd*, 889 F.2d 781, 786 (8th Cir.1989) ("Chitwood's sentence implicitly requires that Chitwood be transferred to Oklahoma, for that is the only course of action that will ensure that the Oklahoma sentence will run concurrently with the Barry County sentence.... Missouri has no control over how Oklahoma runs the time of its prisoners' sentences."); *Chalifoux v. Comm'r*, 375 Mass. 424, 377 N.E.2d 923, 926 (1978) ("The Commonwealth was not obliged to credit time spent by Chalifoux serving his California sentence against his Massachusetts sentence. The California court did not purport to direct that result, and, even if it had, Massachusetts would have had no obligation to give full faith and credit to that judgment."); *Breeden v. New Jersey Dep't of Corrections*, 132 N.J. 457, 625 A.2d 1125, 1127–28 (1993).

**22.** *Aycox v. Lytle*, 196 F.3d 1174, 1180 (10th Cir.1999) ("Aycox has not shown ... that New Mexico's decision to deny him credit resulted in any fundamental unfairness or otherwise denied him due process of law."); *Braun v. Rhay*, 416 F.2d 1055 (9th Cir.1969) ("Nor is there any due process requirement that one state credit to the remaining time of a sentence, the time served by an escapee while incarcerated in another state for a crime committed during the escape period."); *Wallace v. State*, 612 P.2d 284, 285 (Okla. Crim.App.1980) ("There is no due process requirement that Oklahoma ... credit time served in California to the Oklahoma sentence."), *citing Braun v. Rhay, supra.*

**23.** *Meagher v. Clark, supra* note 17 at 1284 ("The prisoner is thus before this court seeking federal credit for time served under a state sentence. This relief ... we cannot grant."); *Brown v. United States*, 912 F.2d 1012, 1014 (8th Cir.1990) (holding that "[t]his court cannot provide a remedy, within the context of this case [factually similar to those in the case at bar]....").

**24.** *Supra* note 21.

**25.** I.e., a Missouri trial court sentenced Chitwood to imprisonment, but ordered its sentence to run concurrent with an Oklahoma sentence from which Chitwood had previously escaped. The MDOC failed to promptly effectuate a transfer of Chitwood to Oklahoma, and instead incarcerated him in a Missouri prison facility.

Missouri sentences."[26]  The Eighth Circuit Court of Appeals left in effect the district court's order requiring Missouri to transfer Chitwood to Oklahoma, but remanded for factual findings as to whether Chitwood would have remaining time to serve in Missouri after he completed his Oklahoma sentence.[27]  We wish to emphasize that, although Appellee's entire argument rests on the premise that the due process rights recognized in *Chitwood* create obligations on the part of the jurisdiction whose sentence was first imposed, *Chitwood* did not purport to make any order as to the Oklahoma sentence.[28]  In fact, the court recognized in its directions upon remand that "Chitwood will complete his sentence in Oklahoma once he is actually transferred to Oklahoma."[29] And, as such, even if an application of the *Chitwood* holding suggests that Missouri violated Appellee's due process rights by failing to promptly tender her to the Kentucky authorities,[30] it requires a questionable leap in logic—and one that is not just

unsupported, but actually contradicted by caselaw[31]—to suggest that Kentucky must release Appellee before she serves the entirety of her Kentucky sentence in order to make good for Missouri's wrong.

Alternatively, Appellee argues that she is entitled to credit for the time she served in Missouri under principles of equity and comity, and, in so doing, Appellee relies primarily upon *Chalifoux v. Commissioner of Correction.*[32]  In *Chalifoux,* the Supreme Judicial Court of Massachusetts ordered credit on a Massachusetts sentence for time a defendant served in connection with a concurrent sentence imposed by California after the defendant escaped from custody in Massachusetts before his term expired.  Massachusetts declined to accept transfer of custody from California, but cited "prison overcrowding" in Massachusetts as the reason for its decision, and "never advised Chalifoux of its decision not to credit him with time served in Califor-

26.  *Id.* at 783.

27.  *Id.* at 786–87.

28.  Under the prevailing view, it likely *could not have* required Oklahoma to accept transfer of custody of the prisoner when offered by Missouri.  See *Jake v. Herschberger, supra* note 18 at 1066 ("Under state law, California prisoners who, like Jake, have a state sentence designated to run concurrently with a federal sentence have a right to be tendered by the state authorities to the federal authorities. *But that state right creates no obligation for the federal authorities to accept the prisoner so tendered.*" (citations omitted and emphasis added)); *Aycox v. Lytle, supra* note 22 at 1179 ("Aycox fails to show that this California rule obligated New Mexico to extradite him."); *Isreal v. Marshall, supra* note 17 at 839 ("However, California law does not—and could not—require Missouri, an independent and sovereign state, to accept custody of appellant.  California law requires only what is within its power to do:  offer appellant up for transfer to Missouri."); *Braun v. Rhay, supra* note 22; *Wallace v. State, supra* note 22 at

285 ("Oklahoma was not a party to the California sentencing decision.  There is no due process requirement that Oklahoma accept petitioner or lose jurisdiction....").

29.  *Id.* at 787.

30.  A conclusion reached, although in dicta, by a federal district court in connection with Appellee's § 1983 action.  See *Brisco–Wade v. Carnahan, supra* note 1 at 905 ("Although plaintiff's established constitutional rights were violated, she unfortunately failed to establish who within the Missouri penal system had the duty to ensure that she would be transferred.").

31.  See *Ange v. Paderick,* 521 F.2d 1066, 1068 (4th Cir.1975) ("And even had the Attorney General [of the United States] been dilatory in transferring the petitioner to state custody, his dilatoriness would not be imputed to the state or require the state to abate the petitioner's sentence to compensate therefor.").

32.  *Supra* note 21.

nia." [33] In holding that Chalifoux was entitled to credit on his Massachusetts sentence from the date that Massachusetts was notified by California of Chalifoux's availability for return to Massachusetts, the *Chalifoux* Court specifically disclaimed that its holding was compelled by any federal or state constitutional provision or by any statutory provision, and instead, the result was dictated by the court's ad hoc "considerations of fairness and a proper sense of justice." [34]

In our view, *Chalifoux* provides no support for the relief granted in the case at bar. The trial court's findings of fact address KDOC's actions in connection with the transfer of custody from Missouri to Kentucky only in passing in stating that "[d]espite petitioner's requests, Kentucky took no affirmative action in effectuating the transfer during the 1 1/2 years." Although this finding appears to impugn KDOC in some manner,[35] it falls far short of establishing a basis for granting custody credit in this case even under Massachusetts notions of fairness. Notwithstanding the assertions in Appellee's brief as to how "offensive" it is that KDOC failed "to go get Appellee" earlier than it did, Appellee fails to make any specific allegation of what she believes KDOC failed to do to effectuate a transfer of custody from Missouri. We agree with Appellant that, until April 7, 1998, when Missouri officials wrote their Kentucky counterparts to inform them that Appellee was available for transfer, Kentucky had no lawful means of assuming custody of Appellee,[36] and we thus perceive no unfairness from KDOC's calculation of Appellee's sentence in accordance with Kentucky law. In any event, however, we observe that Appellee received the same credit awarded to *Chalifoux* because KDOC credited Appellee with "P.V. Time Credit" from April 7, 1998 for the period of time after Missouri informed Kentucky that Appellee was available for transfer (and thus when Appellee was detained in Missouri under Kentucky parole violation warrant).

Accordingly, we hold that Appellee was not entitled to custody credit upon her Kentucky sentence for the time she spent incarcerated on her concurrent Missouri sentence, and, as such, the trial court erred when it applied custody credit from Missouri, concluded that Appellee had satisfied service of her Kentucky sentence, and released Appellee from custody.

## B. VALIDITY OF MISSOURI DETAINER

■ If nothing else, this case illustrates that the summary procedures designed to determine the propriety of habeas corpus relief are inappropriate for determinations unrelated to whether a prisoner is being unlawfully detained. It was for good reason that our predecessor observed that habeas corpus "procedure is designed for the determination of one limited question—the right to immediate possession—and it would be a perversion of the procedure to allow other issues to be injected...." [37] Although we disagree with Appellant's contention that Kentucky courts should never concern themselves with the

---

**33.** *Id.* at 926.

**34.** *Id.*

**35.** We also question whether this factual finding is supported by substantial evidence because we observe that, as outlined above in Part II, the record in this case reflects that, on more than one occasion, KDOC officials contacted their Missouri counterparts to determine when Appellee would be available for transport back to Kentucky.

**36.** *Anglian v. Sowders, supra* note 14 at 790–1.

**37.** *Scott v. Scott,* 445 S.W.2d 871, 872–73 (1969).

validity of another state's detainer,[38] we observe that Appellee's original petition for habeas relief made no claim of entitlement to immediate release, and merely questioned the validity of a detainer that, in and of itself, was not the source of her confinement. As the issues before the trial court blossomed, the detainer issue became such a collateral issue that it is virtually impossible to discern the evidentiary basis for the trial court's determination that Appellee had exhausted service of her Missouri sentence as of October 19, 1999. And, in fact, a review of the videotaped proceedings suggest that the trial court improperly applied the burden of proof as to this issue because, rather than requiring Appellee to demonstrate the invalidity of the Missouri detainer, the trial court largely required Appellant to demonstrate its validity. In any event, we conclude that Appellee failed to demonstrate that she had completed service of her Missouri sentence.

After it was determined that there was no merit to Appellee's initial unsubstantiated allegation that, her concurrent Missouri sentence should have the same starting date as her Kentucky sentence—i.e., 1982—and had therefore long ago expired,[39] the issue became "when would (or did) Appellee serve out on the Missouri sentence?" and, in declaring the detainer

void, the trial court apparently reached a conclusion that is unsupported by substantial evidence. In particular, the trial court's finding of fact that "Missouri regulations indicate petitioner should have been released from Missouri on conditional discharge on January 30, 1999" lacks any grounding in the record. Appellee's own statements to the trial court reflect that the January 30, 1999 date was a date at which she could have, with accumulated credit for good time, received an early conditional release from her Missouri sentence if she accepted an additional term of supervised release. However, Appellee declined to sign the necessary paperwork to secure this release, and thus was not eligible for release from her Missouri sentence until she reached the normal conditional release date of November 30, 1999. And, the trial court released her from custody over a month prior to that November 30, 1999 conditional release date.

Nonetheless, Appellee argues that this issue is now moot because November 30, 1999 has come and gone, and Appellee's counsel has submitted an affidavit with Appellee's brief in which she recounts a conversation with unidentified "Corrections officials" where she was informed that Appellee "was discharged from the Missouri sentence."[40] We also observe

---

**38.** The cases Appellant cites in support of its argument, *Crady v. Cranfill,* Ky., 371 S.W.2d 640 (1963) and *Brewster v. Luby,* Ky., 380 S.W.2d 261 (1964), do, however, suggest a "hands-off" approach as to the validity of detainers when those issues are intertwined with questions of state policy—i.e., whether a "forfeiture of sentence rule" should apply to unauthorized custody transfers of an inmate. *See Commonwealth v. Hale,* Ky., 96 S.W.3d 24, 32 n. 29 (2003).

**39.** Although this would be the case under Kentucky law, *see* KRS 197.035(2); KRS 532.120(1)(b), in Missouri, a concurrent sen-

tence does not have a retroactive starting date, and the sentence instead starts on the date it is imposed. *State ex rel. Lightfoot v. Schriro,* 927 S.W.2d 467, 472 (Mo.App.1996).

**40.** We do not view the affidavit filed by Appellee's counsel as the equivalent of a document from the MDOC reflecting that Appellee has been finally discharged from her sentence, *compare Hudson v. Commonwealth,* Ky., 932 S.W.2d 371, 373 (1996) ("[T]he Commonwealth filed with this Court documents indicating that the Indiana Department of Correction had, in fact, finally discharged Movant on March 1, 1996. Based upon the nature of the

that the federal district court presiding in Appellee's civil suit stated in its order granting summary judgment for the defendants that "Missouri granted plaintiff a conditional release, effective November 30, 1999. She remains on conditional release until July 30, 2001." [41] Of course, we, like Appellant, are at a loss as to how, after being discharged from prison over a month prior to her conditional release date, Appellee subsequently accumulated the necessary custody credit to reach that date. We can find no evidence in the record, and no precedent or statutory provision in Missouri, to support a conclusion that Appellee would be released from MDOC custody on November 30, 1999 regardless of whether she actually accumulated custody credit until that date. And, although we are equipped with nothing more than the relevant dates and a calculator, our arithmetic suggests that Appellee owes forty-two (42) more days on her Missouri sentence before she would be eligible for conditional release.

Notwithstanding the above, we observe that in *Chitwood v. Dowd*, the primary authority upon which Appellee based her argument in favor of habeas corpus, the Eighth Circuit Court of Appeals recognized that "[u]nconditional release from all remaining Missouri time may not be justified if, after serving his time in Oklahoma, Chitwood would have had remaining time to serve in Missouri." [42] And, while we recognize the possibility that the MDOC has finally discharged Appellee from custody, it is clear that the evidentiary record in this case did not support the trial court's conclusion. Accordingly, we vacate the trial court's order declaring the detainer "null and void." If, in fact, Appellee has somehow managed to satisfy her Missouri sentence during the pendency of this appeal, we anticipate that the proper authorities will administratively lift the detainer. If not, Appellee may always petition for a declaration of rights as to the validity of the detainer and, if she is armed with appropriate MDOC documents reflecting a final discharge of sentence, should easily prevail.

## IV. CONCLUSION

For the above reasons, we reverse the Court of Appeals, vacate the trial court's order releasing Appellee from custody and declaring void the Missouri detainer, and remand this matter for the trial court to enter an order denying habeas corpus relief and recommitting Appellee to the custody of KDOC.

All concur.

---

remedy requested, we find that fact dispositive."), and we are not prepared to declare this issue moot as a result of this hearsay.

**41.** *Brisco–Wade v. Carnahan, supra* note 1 at 899. We observe that, although the federal district court's order granting summary judgment cites to portions of the record for many of its factual statements, there is no citation to the record as to this information.

**42.** 889 F.2d 781, 786–787 (8th Cir.1989).